**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 97-20980

LEWIS ANDERSON,

Plaintiff-Appellant,

VERSUS

PASADENA INDEPENDENT SCHOOL DISTRICT, NELDA SULLIVAN,, VICKIE MORGAN, TED SULLIVAN, CARMEN OROZCO, BOB BLAIR, MARSHALL KENDRICK, JR., FRED ROBERTS and FREDRICK SCHNEIDER,

Defendants-Appellees.

consolidated with

No. 98-20384

LEWIS ANDERSON,

Plaintiff-Appellee,

VERSUS

PASADENA INDEPENDENT SCHOOL DISTRICT, NELDA SULLIVAN,, VICKIE MORGAN, TED SULLIVAN, CARMEN OROZCO, BOB BLAIR, MARSHALL KENDRICK, JR., FRED ROBERTS and FREDRICK SCHNEIDER,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas

August 5, 1999

Before DAVIS, STEWART and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Lewis Anderson ("Anderson"), appeals the dismissal of his federal claims against defendants Pasadena Independent School

1

District ("PISD"), PISD Superintendent Frederick Schneider and PISD School Board members Nelda Sullivan, Vickie Morgan, Ted Sullivan, Carmen Orozco, Bob Blair, Marshall Kendrick, Jr., and Fred Roberts. We affirm in part, reverse in part and remand this case to the district court. In a consolidated appeal, defendants appeal a monetary sanction related to an order for remand to state court. We dismiss the appeal of sanctions for lack of jurisdiction.

## I. PROCEEDINGS

On November 6, 1995, Anderson filed suit pursuant to 42 U.S.C. § 1983 alleging that the defendants took adverse employment action against him because he opposed a school bond election and an administrative reorganization. He claimed violation of his free speech rights, and asserted state law claims as well.[1]

The individual defendants moved to dismiss the suit, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the basis of qualified immunity and requested the district court to prohibit discovery until the qualified immunity claim was resolved. On May 17, 1996, after a hearing, the district court ordered Anderson to replead his claims with particularity in order to overcome defendants' assertions of qualified immunity. Anderson filed his Second Amended Complaint on June 21, 1996, adding claims that defendants violated his rights to freedom of association and due process. The individual defendants again filed for Rule 12(b)(6) dismissal claiming qualified immunity. The magistrate judge

---

[1]The procedural history of Anderson's claims related to age discrimination are not detailed here because those claims are not the subject of this appeal.

entered a memorandum and recommendation, Anderson filed objections, and the magistrate judge issued a clarification. On April 2, 1997, the district court granted the individual defendants' motion to dismiss, adopting the magistrate judge's conclusions that 1) in suits against public officials, the defense of qualified immunity mandates a heightened pleading standard which Anderson's pleadings did not meet, 2) the speech in question did involve a matter of public concern, and 3) Anderson failed to establish that his interest in free speech outweighed the school district's interest in the smooth and efficient operation of the district. The district court based its dismissal on the outcome of the First Amendment balancing test and never directly ruled on the individual defendants' claims of qualified immunity.

PISD subsequently filed a motion to dismiss, which the magistrate judge recommended granting on essentially the same basis as the earlier order of dismissal. The district court adopted that recommendation, dismissed Anderson's federal claims with prejudice and Anderson's pendant state law claims without prejudice.

Anderson refiled his state law claims in Texas state court. Defendants removed the action[2] and Anderson moved to remand. The district court remanded the case to state court and ordered the defendants to pay $2000 in court costs, expenses and attorneys fees for the improper removal of the case, which the district court

_____

[2]The original 1995 case was assigned to the Honorable Sim Lake. Upon removal in 1998, the case was assigned to the Honorable Kenneth Hoyt. We refer in this opinion to actions taken by the "district court" without attempting to designate which judge signed any particular order.

3

found was done for the purpose of delay. Defendants filed a motion to reconsider remand. The district court denied the motion to reconsider and ordered defendants to pay $2000 "as reasonable attorney's fees and expenses incurred in filing the motion to reconsider motion to remand."

Anderson appeals the dismissal of his federal claims. In a consolidated appeal, defendants appeal the sanctions imposed for improper removal.

## II. FACTS

Anderson's Second Amended complaint alleges the following facts.

Anderson was first hired by PISD in 1962 as a teacher. He received promotions through the years, holding various administrative positions in PISD's special education program. In 1990, Anderson was promoted to Area Superintendent. During the first 33 years of employment with PISD, Anderson never received a negative evaluation.

In 1994 and 1995, Anderson voiced criticism of an upcoming bond election which the School Board and the Superintendent favored. Anderson also supported a candidate who was running against an incumbent board member who was up for re-election. Thereafter, defendants began efforts to oust Anderson from his position.

In April 1995, Superintendent Schneider advised Anderson that his assistant Michael Fowler was being demoted and that a new Deputy Superintendent position was being created. Anderson would

4

report to the new Deputy instead of directly to Superintendent Schneider, as he had in the past. Anderson was not eligible to apply for the newly created position because it required prior experience as a school principal, which Anderson did not have. The new position was filled without adhering to the PISD policy of advertising job openings.

During the summer of 1995, the board hired a private detective who conducted surveillance of Anderson, a non-incumbent school board candidate who Anderson supported and some of Anderson's other associates. In August of 1995, Schneider called Anderson to his office and proposed that Anderson agree to resign (relinquishing his contract right to two additional years of employment at more that $70,000 per year) and to "publicly and privately support the proposed election to issue bonds" in exchange for $30,000. Anderson was told that if he did not agree, he would be reassigned to transportation, food services or maintenance -- all low-level, dead end jobs. Anderson refused to sign the agreement, stating that he felt that it was illegal.

A few days after his refusal, Anderson was reassigned to the newly created position of Associate Superintendent for Project Management and given responsibilities which had previously been handled, for the most part, by a secretary. Again, the position was not advertised in accordance with PISD policy. Anderson's pay was not changed.

On October 30, 1995, Anderson received his first negative evaluation in thirty-three years with PISD, in which Superintendent

5

Schneider directly reprimanded Anderson for speaking out on the bond election and PISD's reorganization. Schneider made it clear that Anderson was free to speak out on these issues "outside of work" but that "such comments at work are inappropriate, disruptive and will not be tolerated." During the same time period, the administration spoke out in support of the bond election during mandatory faculty meetings and other district functions, making PISD work-time a public forum for considering the bond election issues.

Anderson contends that the allegedly unconstitutional actions were taken by the defendants, individually and acting as a body, but that he cannot know, prior to discovery, precisely who instigated or authorized the actions because the actions originated in closed board meetings.

## III. RULE 12(b)(6) ORDERS OF DISMISSAL

### A. Standard of review

A Rule 12(b)(6) order of dismissal for failure to state a claim on which relief can be granted is reviewed *de novo*, and "will not be affirmed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

In reviewing defendants' claim of qualified immunity, we must first ascertain whether Anderson has sufficiently asserted the violation of a constitutional right. *See Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993). Second, we must determine whether

6

defendants' conduct was objectively reasonable in light of law clearly established at the time of the incident. *See Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992).

## B. Heightened Pleading Requirement – Individual Board Members

The magistrate judge's Memorandum and Recommendation, adopted by the district court, states that "Anderson has not satisfied the heightened pleading standard in order to overcome the defense of qualified immunity. Accordingly, it is RECOMMENDED that Anderson's claims against the individual board members be DISMISSED." The magistrate judge then goes on to recommend dismissal of these defendants based on an independent, alternative ground. On appeal, Anderson challenges the district court's ruling regarding the "heightened pleading standard," contending that his Second Amended Complaint was sufficient to state a cause of action and to overcome the defendants' claims of qualified immunity.

The Supreme Court abrogated the Fifth Circuit heightened pleading requirement for actions against municipalities, but did not consider whether qualified immunity jurisprudence would require heightened pleading in cases against individual government officials. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166-67 (1993). This court thereafter declined to abandon the requirement, articulated in *Elliott v. Perez* 751 F.2d 1472 (5th Cir. 1985), that plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to a constitutional violation. *See Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). However,

7

no heightened pleading is required in actions against individual defendants in their official capacities, because "official-capacity lawsuits are typically an alternative means of pleading an action against the governmental entity involved[.]" *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Anderson sued the board members and the superintendent in their individual capacities only. In order to survive, those actions "must be pleaded with 'factual detail and particularity,' not mere conclusionary allegations." *Jackson v. Widnall*, 99 F.3d 710, 715-16 (5th Cir. 1996)(quoting *Schultea,* 47 F.3d at 1430).

In order to state a cause of action under § 1983, Anderson must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. *See Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). It is not enough to allege that government officials with no direct contact with a plaintiff are responsible for acts of their subordinates. *See id.* Anderson's Second Amended complaint alleges that the board members and the superintendent made specifically enumerated decisions that adversely impacted his employment in violation of his constitutional rights. Anderson candidly admits that the defendants made decisions in closed meetings that precluded Anderson from knowing, prior to discovery, whether each defendant voted for or dissented from those decisions. However, Anderson makes no attempt to hold the individual defendants liable for actions or decision of their subordinates with which they had no

8

involvement, but rather seeks to establish each defendant's responsibility for his or her own actions. We find that Anderson pleaded with sufficient particularity facts establishing a causal connection between defendants' actions and decisions and the alleged constitutional violations. We therefore hold that the district court's conclusion that Anderson's complaint lacked the factual specificity required to overcome the defense of qualified immunity was error.

## C. First Amendment Claims

It is well established that a state may not discharge, discipline, or otherwise retaliate against a public employee for exercising his First Amendment right to free speech. *See Rankin v. McPherson*, 483 U.S. 378, 383 (1987). However, a public employee's right to free speech is limited when it conflicts with his role as a public employee*. See Kinsey v. Salado Indep. School Dist.*, 950 F.2d 988, 992 (5th Cir. 1992). In order for speech to be entitled to protection, the plaintiff must establish that his speech addressed a matter of public concern. *See Click v. Copeland*, 970 F.2d 106, 111 (1992)(citing *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)). If the plaintiff's speech does not relate to a matter of public concern, the court's inquiry ends. *See id.* If, however, the court concludes that the speech at issue meets the threshold inquiry, then the court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern [against] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through

its employees.'" *Id.* (quoting *Pickering v. Board of Educ. Of Tp. High School Dist.*, 391 U.S. 563, 568 (1968).

When a plaintiff's claims arise under both freedom of speech and freedom of association, as in the case at bar, the freedom of association claims are analyzed under the same *Pickering* balancing test used to determine the success of the freedom of speech claims. *See O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996). We therefore balance Anderson's First Amendment rights of free speech and free association against the defendants' interests in efficiently providing public education to the students of PISD.

We begin by noting that whether Anderson's speech addressed a matter of public concern is a question of law. *See Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994). The district court concluded, and the parties do not dispute on appeal, that Anderson's speech regarding the district bond election and the job performance of the individual defendants involved matters of public concern. We agree.

We move then to the focus of this appeal, the *Pickering* balance struck by the district court, remaining mindful that we must "'tailor the analysis to the particular facts of each case[.]'" *Nieto v. San Perlita Indep. School Dist.*, 894 F.2d 174, 180 (5th Cir. 1990)(quoting *Matherne v. Wilson*, 851 F.2d 752, 760 n.48 (5th Cir. 1988)).

Central to the district court's decision is its reliance on *Kinsey v. Salado Indep. School Dist.*, 950 F.2d 988 (5th Cir. 1992),

10

which it found factually analogous to the case at bar. In *Kinsey*, a suspended public school superintendent brought a § 1983 action against the school board alleging violation of his First and Fourteenth Amendment rights to speak out concerning the performance of elected school board members. *See id.* at 991. The district court granted summary judgment for defendants on Kinsey's Fourteenth Amendment claims and, after trial, granted a judgment notwithstanding the verdict on his First Amendment claims. *See id.* at 991-92. The Fifth Circuit *en banc* court affirmed. *See id.* at 997.

Like the district court, we conclude that *Kinsey* provides guidance by setting out the legal framework for analyzing Anderson's First Amendment claims. However, we find it impossible to dispose of Anderson's claims at this stage of the proceedings on the basis of a *Kinsey* analysis because we do not have the benefit of facts sufficient to flesh out the framework.

*Kinsey* instructs us to consider whether a close working relationship between Anderson and the individual defendants is essential. *See id*. at 995. Because Texas law provides for a school board and a superintendent for each public school district, we examined the applicable statutory language to discern the parameters of the relationship between *Kinsey* and the board member defendants. *See id.* There is no provision in Texas law setting out the duties and responsibilities of "Area Superintendent" or "Associate Superintendent for Project Management" to give us guidance in this case. Further, the trial record in *Kinsey*

11

established that "[o]ne of Kinsey's primary duties was to advise the Board," and to attend executive board sessions and offer opinions and recommendations to guide its decisions. *See id*. Kinsey also handled the School District finances and made recommendations on hiring teachers and principals. *See id*. at 996. Kinsey was custodian of the School District's confidential records including personnel files, sealed bids, working papers on proposed rules and policies, and student records, and was called on to advise the Board concerning these and other confidential matters. *See id.* Relying on the well developed, fact intensive trial record, we concluded that it was essential for Kinsey to have a close working relationship with the defendant board members and that their relationship had been disrupted to the point of precluding effective performance by Kinsey. *See id.*

In contrast, the district court in the case at bar considered Anderson's statement in his Second Amended Complaint that he "supervised half of the district campuses," Anderson's characterization of his position as "high profile" and "second-in-command," and his participation in the superintendent's "informal cabinet" to conclude that Anderson would not be able to effectively carry out his duties while opposing the bond election and supporting a non-incumbent candidate for the board. As illustrated by the analysis in *Kinsey,* Anderson's ability to effectively carry out his duties is a fact-intensive inquiry that requires, at a minimum, evidence or stipulations concerning what those duties were. Without benefit of summary judgment evidence, trial, or even

12

rudimentary discovery, the record in this case is not sufficient to perform a *Pickering* balancing test. In addition, Anderson's complaint can be read to allege that he previously supported some of the present board members when they were "non-incumbent" and continued to successfully fulfill his responsibilities to the school district. We must therefore reverse the trial court's dismissal of Anderson's First Amendment claims.

**D. Due Process Claims**

Anderson alleges that his rights to due process were abridged when he was demoted from Area Superintendent, which required a certification, to Associate Superintendent, which did not, because positions lacking a certification requirement do not carry the benefits of a written employment contract which he enjoyed as Area Superintendent. The district court rejected this argument holding that Anderson did not plead a constitutionally protected property interest in any non-economic benefit and that, because his salary was not reduced when he was reassigned, he had alleged no due process violation.

On appeal, Anderson makes a conclusory statement that he has pleaded a due process right associated with school employment contracts, citing to a page in *Kinsey* that does not exist, and to the "fact," which does not appear in the record before us, that he has subsequently been forced into early retirement. In *Kinsey,* we rejected a due process property interest claim to the non-economic benefit of duties and responsibilities of the position of superintendent. *See Kinsey*, 950 F.2d at 996-97. There is no

13

mention in *Kinsey* of Anderson's theory of due process rights growing out of school employment contracts. We see no basis in Anderson's Second Amended Complaint, in the briefs or in pertinent authority for reversing the district court's Rule 12(b)(6) dismissal of Anderson's due process claims.

## IV. SANCTIONS

After the district court dismissed Anderson's state claims without prejudice, he refiled those claims in Texas court and the defendants removed them to federal court. The defendants appeal the sanctions imposed by the district court in its order remanding that action to state court. Anderson urges us to dismiss defendants' appeal of the orders for sanctions for lack of jurisdiction. Finding merit in that argument, we dismiss the appeal in case number 98-20384.

The district court entered two orders regarding sanctions. The first, entered on February 20, 1998, ordered "that the defendants shall pay a reasonable and necessary fee of $2000.00 in court costs, expenses and attorney fees for the improper removal of this case[.]" Defendants filed a motion for reconsideration of that order on March 2, 1998. The district court denied the motion on April 17, 1998, ordering "that defendants shall pay the counsel for plaintiff . . . the sum of $2000.00 as reasonable attorney's fees and expenses incurred in filing the motion to reconsider motion to remand." Defendants filed their notice of appeal on April 27, 1998, appealing

> from the Order entered in this action on April 17, 1998, denying reconsideration of the Court's award of

14

"$2,000.00 in court costs, expenses and attorney's fees for . . . improper removal, which the Court [found] was done for purposes of delay," as set forth in its Order for Remand of February 20, 1998, from which appeal is also taken to that extent.

Federal Rule of Appellate Procedure 4(a)(1)(A) provides that, in a civil case, the notice of appeal must be filed with the district clerk within thirty days after entry of the judgment or order appealed from. The Notice of Appeal was filed 66 days after the February 20, 1998 Order of Remand, but within the thirty day appeal window after the April 17, 1998 order.

Defendants contend that their Motion for Reconsideration extended the time within which they could appeal the April 17, 1998 Order of Remand. Under Federal Rule of Appellate Procedure 4(a)(4), the timely filing of certain post-decision motions defers the start of the appeal period until disposition of the motion. The motions that will extend or toll the thirty-day time limit under Rule 4 include: 1) a motion under Civil Rule 50(b)(insufficient evidence for judgment); 2) a motion under Civil Rule 52(b)(to amend judgment or make additional findings of fact); 3) a motion under Civil Rule 60 (for relief from a judgment); 4) a motion for attorney's fees by the prevailing party under Civil Rule 54; 5) a motion for new trial under Civil Rule 59(a); and 6) a motion to amend or alter judgment under Civil Rule 59. Defendants argue that we should treat their motion for reconsideration as a Rule 59(e) motion to alter or amend judgment. We cannot. Defendants' motion for reconsideration sought only to have the monetary sanctions vacated and "such other and further relief to

15

which Defendant may show themselves justly entitled." Because the question of sanctions raised in defendants' motion for reconsideration is collateral to the determination of the merits of the motion to remand, it does not amount to a Rule 59(e) motion triggering Rule 4(a)(4). *See Campbell v. Bowlin*, 724 F.2d 484, 488 (5th Cir. 1984)(overruled on other grounds by *United States v. Clark*, 51 F.3d 42 (5th Cir. 1995)). Therefore, the notice of appeal filed 66 days later did not vest this court with jurisdiction to review the sanction order imposed by the February 20, 1998 order of remand. Further, the notice of appeal is limited by its terms to the $2000.00 sanction order contained in the February 20, 1998 order, and so is not effective in appealing the $2000.00 sanction imposed by the April 17, 1998 order.[3] We conclude that we have no jurisdiction to review the propriety of either sanction order and consequently must dismiss the appeal.

### V. CONCLUSION

The judgment appealed in case number 97-20980 is AFFIRMED in part, REVERSED in part and REMANDED to the district court for

---

[3]Approximately six weeks after filing their notice of appeal, defendants filed a motion for leave to file Amended Notice of Appeal. While maintaining that the second sanction order reaffirmed the first $2000 sanction, rather than imposing an additional $2000 sanction, the defendants sought, "in an abundance of caution" to "also appeal any additional sanction that may have been assessed by the Court in its April 17, 1998 Order." On September 23, 1998, the district court denied the motion stating that an amended notice of appeal was unnecessary because only one sanction was assessed. However, we are constrained by the plain language of the two sanction orders and cannot base our jurisdiction on language by the district court interpreting those orders five months after the notice of appeal was filed and after the district court lost jurisdiction to clarify or modify the sanctions.

16

further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part and REMANDED.

The appeal in case number 98-20384 is DISMISSED.

DISMISSED.

17