IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-50266
_____


ADISA R A M AR-RA'ID


                              Plaintiff - Appellant

        v.

OMAR SHAKIR, Chaplain; AKBAR SHABAZZ; EUGENE FAROOQ


                              Defendants - Appellees

_____

Appeal from the United States District Court
for the Western District of Texas
No. SA-00-CV-78-FB
_____
May 31, 2002

Before KING, Chief Judge, and PARKER and CLEMENT, Circuit Judges.

PER CURIAM:[*]

    In federal district court, Plaintiff-Appellant Adisa R.A.M.

Ar-Ra'id asserted equal protection claims against

Defendants-Appellees Omar Shakir, Akbar Shabazz, and Eugene

Farooq pursuant to 42 U.S.C. § 1983 (1994).  The district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

granted summary judgment in favor of Defendants-Appellees Shakir, Shabazz, and Farooq. For the following reasons, we AFFIRM the district court's summary judgment with respect to Shabazz and Farooq, REVERSE summary judgment with respect to Shakir, and REMAND the case to the district court.

## I.  Factual and Procedural History

Plaintiff–Appellant Adisa R.A.M. Ar-Ra'id, a Shi'ite Muslim, is a Texas prisoner assigned to the John B. Connally Unit (the "Connally Unit") of the Texas Department of Criminal Justice – Institutional Division ("TDCJ"). The religion of Islam requires all believers to fast during the daylight hours of the holy month of Ramadan and to eat a special meal after sunset. According to TDCJ policy, "any ceremony that is prescribed by a faith group as a requirement for adherents and approved for observance by appropriate TDCJ authorities shall be coordinated by the Chaplain." Accordingly, Defendants-Appellees Omar Shakir, Akbar Shabazz, and Eugene Farooq (collectively, the "Defendants"), Muslim chaplains for the Connally Unit, the Wynne Unit, and the Ramsey III Unit, respectively, approved written procedures for Muslim prisoners to participate in religious services and holidays required by the Islamic faith. These procedures allow for the provision of a special Ramadan meal for eligible Muslim prisoners and dictate that "[t]he assigned Muslim Chaplain is responsible for determining who is eligible" for the meal.

2

Shakir asserts that the Muslim chaplains decide eligibility for the Ramadan meal based on a prisoner's recorded faith preference and on the prisoner's weekly attendance at Friday Jumah services. According to Shakir, only prisoners who have specified a Muslim faith preference and who regularly attend the Jumah services are eligible to partake in the special Ramadan meal. Ar-Ra'id has specified a Muslim faith preference, but he chooses not to attend the Jumah services. Ar-Ra'id contends that he does not attend the Jumah services because the services conform to the Sunni school of thought, a school of thought within Islam with which Ar-Ra'id disagrees. Ar-Ra'id further alleges that the Defendants ridicule the Shi'ite school of thought during the Jumah services and are generally hostile towards him and other Shi'ite Muslims.

When Ramadan began on December 9, 1999, the Defendants allegedly excluded Ar-Ra'id from the list of prisoners eligible for the special meal after sunset because Ar-Ra'id did not regularly attend the Friday Jumah services. Ar-Ra'id filed suit in Texas state court against Shakir, seeking relief pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, the Texas Constitution, and state tort law. With respect to the § 1983 claims, Ar-Ra'id alleged violations under the First and Fourteenth Amendments. Ar-Ra'id argued that Shakir violated his First Amendment rights by requiring him to attend the Jumah services to gain access to the Ramadan meal. Ar-Ra'id further alleged that Shakir violated

3

his equal protection rights under the Fourteenth Amendment because Shakir allowed other Muslim prisoners to participate in the Ramadan meal even though they did not regularly attend the Jumah services. Shakir removed the suit to federal district court on the ground that it presented a federal question, and Ar-Ra'id then added Shabazz and Farooq as defendants.

The Defendants moved to dismiss Ar-Ra'id's § 1983 claims made against them in their official capacities, all claims under § 1985 and § 1986, all state tort law claims, and claims under the Texas Constitution seeking damages, rather than injunctive relief. In his response, Ar-Ra'id conceded to dismissal of the official capacity claims and the state constitutional claims to the extent that he sought damages, rather than injunctive relief, and conceded to dismissal of all tort claims and all claims asserted under § 1985 and § 1986. Ar-Ra'id maintained claims against the Defendants in their official capacities for injunctive relief under § 1983 and the Texas Constitution, and in their individual capacities for damages and injunctive relief under § 1983 and for injunctive relief under the Texas Constitution.

In addition to moving for dismissal of Ar-Ra'id's claims, the Defendants also moved for summary judgment with respect to Ar-Ra'id's remaining claims. With respect to Ar-Ra'id's § 1983 claims, the Defendants argued that their policy of limiting attendance at the Ramadan meals to prisoners who regularly attend

4

the Jumah services is rationally connected to a legitimate penological interest. The Defendants further argued that Ar-Ra'id's equal protection claim fails because all Muslim prisoners are required to attend Jumah services to be eligible for the Ramadan meal and because Ar-Ra'id cannot demonstrate purposeful discrimination.

In opposition to summary judgment, Ar-Ra'id produced evidence showing Shakir's hostility towards Shi'ite Muslims. Ar-Ra'id also produced evidence demonstrating that some Muslim prisoners were allowed to participate in the Ramadan meals without attending Jumah services. The district court granted summary judgment in favor of the Defendants, ruling that "[t]he record shows no basis for concluding Plaintiff was prevented from engaging in conduct required by his faith" and that "Plaintiff also failed to present competent evidence of purposeful discrimination as a basis for an equal protection claim." Ar-Ra'id timely appealed that judgment.

The district court denied Ar-Ra'id in forma pauperis ("IFP") status on appeal, but this court granted IFP status to Ar-Ra'id with respect to his equal protection claim.[1] In an unpublished order, this court explained:

> [T]he record indicates that Ar-Ra'id
> presented competent evidence, including

---

[1] This court concluded that Ar-Ra'id abandoned his First Amendment claim due to inadequate briefing, however, so Ar-Ra'id was not granted IFP status with respect to that claim.

> affidavits, in opposition to summary judgment suggesting that there is a disputed question as to the defendants' treatment of Shi'ite Muslims and whether they allowed other inmates to have access to the Ramadan meals without similarly requiring them to attend the Friday Islamic services. The evidence arguably contradicts the defendants' evidence that prison regulations were applied equally to all Muslim offenders for the observance of Ramadan.

On appeal, Ar-Ra'id argues that the district court erred in granting summary judgment in favor of the Defendants on his equal protection claim.

## II. Standard of Review

We review a grant of summary judgment de novo, applying the same standards as the district court. Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 167 (5th Cir. 1999). Summary judgment is proper when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence in a light most favorable to the non-movant. Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997). However, if the moving party presents sufficient evidence to support summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial in order to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

## III. Ar-Ra'id's Claims Against Shabazz and Farooq

6

Ar-Ra'id asserts his equal protection claims against the Defendants pursuant to 42 U.S.C. § 1983.[2]  This provision does not create substantive rights but merely furnishes a remedy for the violation of rights provided by the Constitution or other federal statutes.  To establish a § 1983 claim, Ar-Ra'id must prove: (1) that the conduct complained of was committed by a person or entity acting under color of state law; and (2) that the conduct violated rights secured by the Constitution or a federal statute.  Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994).

Shabazz and Farooq argue that because Ar-Ra'id's summary judgment evidence fails to show that Shabazz or Farooq had any personal involvement in the events occurring at the Connally Unit, where Ar-Ra'id was confined, his claims against them fail as a matter of law.  We agree.  To state a cause of action under § 1983, a plaintiff must "identify defendants who were either personally involved in the constitutional violation or whose acts

_____

[2]    Section 1983 provides, in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitutional laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
42 U.S.C. § 1983 (1994).

7

are causally connected to the constitutional violation alleged." Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999).

The evidence in this case shows that Shabazz is the Muslim chaplain at the Wynne Unit and that Farooq is the Muslim chaplain at the Ramsey III Unit. Ar-Ra'id is confined at the Connally Unit where Shakir is the Muslim chaplain. According to written procedures, "[t]he assigned Muslim Chaplain is responsible for determining who is eligible" for the Ramadan meals. Although Shabazz and Farooq collaborated with Shakir to create these procedures, none of the evidence submitted by Ar-Ra'id in opposition to summary judgment suggests that Shabazz or Farooq were personally involved in the application of the procedures at the Connally Unit. Thus, Ar-Ra'id's claims that Shabazz and Farooq violated his equal protection rights fail as a matter of law. Accordingly, the district court's grant of summary judgment in favor of Shabazz and Farooq was proper.

### IV. Ar-Ra'id's Claim Against Shakir

In his equal protection claim, Ar-Ra'id does not appear to challenge the policy linking eligibility for the Ramadan meals to attendance at the Jumah services. Rather, Ar-Ra'id asserts that the inconsistent application of that policy violates his equal protection rights. Specifically, Ar-Ra'id argues that his summary judgment evidence demonstrates that Shakir "intentionally

8

and willfully instituted a hate campaign against [Shi'ite Muslims]" which effectively barred Ar-Ra'id's attendance at the Jumah services and thus barred his access to the Ramadan meals. Further, Ar-Ra'id asserts that Shakir allowed other Muslims to have access to the Ramadan meals even though those Muslims did not attend the Friday Jumah services.

To establish an equal protection violation a plaintiff must demonstrate that "he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985)). To rise to the level of an equal protection violation, the alleged unequal treatment must not be "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).[3] Discriminatory intent is present when "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable

---

[3] We need not determine whether Ar-Ra'id's equal protection claim implicates a suspect class or a fundamental right. Although strict scrutiny is generally appropriate where a government classification implicates a suspect class or a fundamental right, Rublee v. Fleming, 160 F.3d 213, 217 (5th Cir. 1998), we apply the "legitimate penological interest" standard in the prison context even if "under other circumstances [we] would have been required to [apply] a more rigorous standard of review." Washington v. Harper, 494 U.S. 210, 223 (1990).

group." Taylor, 257 F.3d at 473 (internal citations and quotations omitted).

Ar-Ra'id presented summary judgment evidence to the district court suggesting that Shakir intentionally discriminated against Shi'ite Muslims and treated other similarly situated Muslim prisoners differently from Ar-Ra'id. Shakir does not indicate, and we cannot imagine, any legitimate penological interest supporting this alleged inconsistent treatment of Muslim prisoners. Viewing the evidence in a light most favorable to Ar-Ra'id, as we must do, we conclude that Ar-Ra'id raises genuine issues of material fact.

A. Unequal Treatment

Ar-Ra'id presented to the district court substantial evidence that Shakir treated him differently than other similarly situated individuals during the Ramadan month extending from December 1999 through January 2000. In addition to Ar-Ra'id's own affidavit alleging unequal treatment, Ar-Ra'id offered affidavits from three other prisoners confined in the McConnell Unit. Prisoner James Brown avers that he participates in Ramadan activities (presumably including Ramadan meals) but does not attend the Jumah services. Prisoner Jimmy Henderson states that he was confined in the McConnell Unit during Ramadan from December 1999 to January 2000 and that there were "numerous individuals" who participated in the Ramadan meals even though they "had never been to any Friday services or attended them very

10

infrequently." Prisoner Earthel Hill states in his affidavit that he "participated in the festivities and the partaking of the meal" without attending the Jumah services.

Shakir argues that these affidavits are unpersuasive because the affiants are confined in the McConnell Unit rather than in the Connally Unit with Ar-Ra'id. However, viewed in a light most favorable to Ar-Ra'id, the evidence suggests that Muslim prisoners at the McConnell and the Connally Units are similarly situated. Although Shakir's office is located in the Connally Unit, he is assigned as the Islamic chaplain to a region that includes both the Connally and the McConnell Units. Thus, Shakir is responsible for the Ramadan meal process at both the Connally and the McConnell Units. Furthermore, although the evidence does not clearly reflect what Shakir's specific duties are with respect to the Ramadan meal process, viewed in a light most favorable to Ar-Ra'id, the evidence suggests that Shakir was directly responsible for determining who could attend the Ramadan meal at both the Connally and the McConnell Units. Thus, the Brown, Henderson, and Hill affidavits demonstrate the existence of a genuine issue of material fact regarding whether Shakir treated other similarly situated Muslim prisoners differently from Ar-Ra'id.

Ar-Ra'id also produced attendance lists from some of the Ramadan services and a list of prisoners eligible for the Ramadan meals. Neither the lists themselves nor Ar-Ra'id's brief in

opposition to summary judgment specify from which unit the lists originate. The lists show that some prisoners who did not attend the Ramadan services were nevertheless eligible to participate in the Ramadan meals. Although we cannot be certain about the origins of these lists, viewed in a light most favorable to Ar-Ra'id, these lists also raise a genuine issue of material fact regarding the unequal treatment of similarly situated Muslim prisoners.

B. Discriminatory Intent

In addition to showing that he was treated differently from other similarly situated individuals, Ar-Ra'id must demonstrate discriminatory intent in order to establish an equal protection claim. Taylor, 257 F.3d at 473. Ar-Ra'id presented to the district court substantial evidence of Shakir's hostility towards Shi'ite Muslims. In their affidavits, prisoners Ahmad Ali and Trevor Haughton describe Shakir's statements made during the Ramadan service at the Connally Unit on December 22, 1999. According to Ali, Shakir labeled Shi'ite Muslims "controversial" and then stated that "[n]o one who is controversial will have a position in the Islamic community. They are not allowed to lead prayer, make the call to prayer, be a sheriff or teach any classes." According to Haughton, Shakir became "hostile and arrogant, directing his bitterness and hatred towards the Shia's." Shakir then stated that the Shi'ite Muslims were not to hold any position in the Islamic community. Haughton further

12

avers that Shakir told him that "[he] can't pray as [he'd] been taught or learned as a Shia." Haughton alleges that "Shakir has a history of attacking the Shia Muslim all over this region."

Ar-Ra'id also presented the affidavit of Jimmy Henderson, the Islamic coordinator at the Connally Unit from approximately 1996 to 1998. In his affidavit, Henderson states that he "was instructed by [Shakir] not to teach Islam according to the Shia School of Thought and not to allow anyone else to teach the Shia School of Thought." Henderson further states that, during his term as the Islamic coordinator at the Connally Unit, Shakir "did not want anyone practicing the Shia School of Thought to lead the prayers."

Shakir argues that this evidence shows only a belief as to who should lead religious activities and does not indicate an intent to discriminate in the context of access to the Ramadan meals. We find this argument unpersuasive. Viewing the evidence in a light most favorable to Ar-Ra'id, we can infer discriminatory intent from Shakir's general hostility towards Shi'ite Muslims. Thus, Ar-Ra'id's evidence raises a genuine issue of material fact regarding whether intentional discrimination against Shi'ite Muslims was the cause of Shakir's inconsistent application of the Ramadan meal policy.

### V. The Prison Litigation Reform Act

13

The Defendants asserted in their summary judgment motion that they were entitled to summary judgment on all damages claims under 42 U.S.C. § 1983 because Ar-Ra'id failed to show that he suffered any physical injury, as is required by the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e (Supp. 2001). The district court did not address this issue. The PLRA states that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Id. § 1997e(e). In Oliver v. Scott, 276 F.3d 736 (5th Cir. 2002), we noted that we have "applied the PLRA's damage limits only to prisoners' claims of cruel and unusual punishment under the Eighth Amendment . . . . We have not considered the application of the PLRA to constitutional violations usually unaccompanied by physical injury, such as First Amendment retaliation claims, privacy claims, and equal protection claims." Id. at 747 n.20. Applying the PLRA to limit Ar-Ra'id's relief "would raise difficult constitutional questions not previously addressed in this circuit." Id. For this reason, we choose not to reach the issue at this early stage of the proceedings.

## VI.  Conclusion

Because Ar-Ra'id's summary judgment evidence fails to show that Shabazz or Farooq had any personal involvement in the events

14

occurring at the Connally Unit, the district court's grant of summary judgment in favor of Shabazz and Farooq was proper. Accordingly, we AFFIRM summary judgment with respect to Shabazz and Farooq. However, we conclude that Ar-Ra'id raises genuine issues of material fact regarding whether Shakir, acting with discriminatory intent, treated other similarly situated Muslim prisoners differently from Ar-Ra'id with respect to the prisoners' eligibility for special Ramadan meals. Thus, the district court improperly granted summary judgment to Shakir on Ar-Ra'id's equal protection claim. Accordingly, we REVERSE summary judgment with respect to Shakir and REMAND the case to the district court.