United States Court of Appeals
Fifth Circuit

**F I L E D**

July 7, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-11021
_____

VICTOR ALVARADO DELEON,

Plaintiff-Appellee,

v.

CITY OF DALLAS, ET AL.,

Defendants,

DAVID LARSEN, Dallas Police Officer;
OFFICER MATA, #7313,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Texas
No. 3:02-CV-1097-K

_____

Before JOLLY, JONES, and DEMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

The question in this qualified immunity appeal is whether
plaintiff DeLeon sufficiently stated a claim for violation of his
constitutional right to be free from false arrest and detention
against Officers Larsen and Mata. Because he did not do so, either
on the merits or as to their qualified immunity defense, we reverse
the district court's order denying the Officers' motion to dismiss

_____

[*]Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

these claims.  We decline to rule, however, on the sufficiency of DeLeon's pleading of other claims that the Appellants have inadequately briefed.  Consequently, the district court's order is reversed in part, and the appeal is dismissed in part.

### BACKGROUND[1]

On April 19, 2001, Victor Alvarado DeLeon ("DeLeon"), a Mexican national, traveled to a mechanic shop in Dallas, Texas, with a male companion, also a Mexican national, to observe repairs to a vehicle owned by DeLeon's brother-in-law.  According to his affidavit filed on or about that date, undercover Officer DeLaPaz allegedly witnessed a drug transaction between DeLeon and a confidential informant at the shop.  As DeLeon and his companion were leaving the shop, police cars converged on the scene.  Dallas police officers detained all of the men at the premises, forced them to lie face-down on the ground, and searched them.  DeLeon was interrogated and accused, along with his companion, of selling cocaine to the confidential informant.  DeLeon had no significant amount of money on his person, but a baggie containing a white powder was allegedly removed from his pants pocket during the search.

DeLeon was arrested for selling four ounces of cocaine for $2,500 to the confidential informant.  Thereafter, Officers David Larsen ("Larsen") and Michael Mata ("Mata") field tested the

---

[1]We take as true the facts alleged by DeLeon's Complaint, see R. at 86-100.

white powder substance, which, they reported, weighed 131.8 grams and tested positive for cocaine. The baggie was checked into a police lockbox, tagged, and re-weighed at 158.7 grams, 26.9 grams more than the amount earlier recorded.

DeLeon was released on a writ of habeas corpus three days later, was delivered to the Immigration and Naturalization Service, and was summarily expelled to Mexico. Because of family obligations in the United States, DeLeon reentered the country. On or about June 11, 2001, he was stopped while driving to a gas station in Texas and arrested on a warrant related to his April 19, 2001, arrest.

During the stop, one of the arresting officers indicated that DeLeon's April 19 drug sale to the confidential informant had been videotaped. However, the state could not later locate and produce the tape upon request. At the further request of DeLeon's counsel, the baggie containing the white powder substance was re-tested for content and fingerprints. Lab tests, made available to DeLeon and his counsel in August, concluded that DeLeon's fingerprints were not on the baggie; that the substance remaining in the package was "not subject to quantitation [sic];" and that it weighed 126 grams. The lab report also described the baggie as a "green plastic wrapper," while the arrest affidavit had referred to a "clear baggie." DeLeon remained in detention until a trial date of September 10, 2001. Only then, when the confidential informant failed to appear, were the charges dropped, and he was released.

3

DeLeon denies being involved in any unlawful activity on April 19, 2001.

On April 19, 2002, DeLeon filed an action in state court against a number of defendants, including Officer Larsen, which the City of Dallas removed to federal court.  In an amended complaint, he joined Officer Mata and others and asserted, inter alia, federal causes of action under 42 U.S.C. §§ 1981 and 1983 for false arrest and detention, and overlapping state law claims including malicious prosecution.

Sued in their individual capacity, Officers Larsen and Mata asserted qualified immunity.  Relatedly, they filed a Rule 7(a) motion urging that DeLeon specify his allegations tailored to their qualified immunity defenses.  DeLeon opposed the Rule 7(a) motion, and the district court denied it.[2]  They then joined a motion for protective order, filed in a related case,[3] seeking to stay discovery pending the district court's qualified immunity ruling.  Finally, the Officers filed a Rule 12(c) motion

_____

[2]Although Officers Larsen and Mata do not appear to appeal directly the district court's denial of their Rule 7(a) motion, the district court should have ordered a Rule 7(a) reply in this case.  As we have consistently held, "trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses."  Reyes v. Sazan, 168 F.3d 158, 161 (5th Cir. 1999).  Despite the district court's error, we need not remand this case for a Rule 7(a) reply as we are convinced, especially after oral argument, that DeLeon has pled his "best case."  see Morin, 77 F.3d at 121.

[3]Erubiel Cruz, et al. v. Mark DeLaPaz, et al., Civil Action No. 3:02-CV-0649-K, on appeal to this Court in Nos. 04-10488 and 04-10829.

for judgment on the pleadings based on DeLeon's failure to state a claim capable of defeating their qualified immunity defenses.

The district court dismissed DeLeon's § 1981 claim, but it found that DeLeon pleaded facts sufficient to state federal causes of action against Officer Larsen for false arrest and detention under § 1983, as well as state law causes of action for defamation and libel, intentional infliction of emotional distress, and malicious prosecution and abuse of process. The court also found DeLeon's pleading sufficient to state claims against Officer Mata for false arrest and imprisonment, defamation and libel, and malicious prosecution under state law.[4] In so doing, the court rejected the Officers' qualified immunity defenses from the standpoint of insufficient pleadings, and it found that genuine issues of triable fact existed as to whether Officers Larsen and Mata engaged in the acts alleged to have violated DeLeon's constitutional rights. The court did not set forth these facts. These Officers timely appealed.

---

[4]Because the Officers specifically brief only the district court's denial of their qualified immunity defenses as to DeLeon's federal false arrest and state malicious prosecution claims, they have waived any appellate contest of the sufficiency of pleading of DeLeon's other claims. <u>Shields v. Twiss</u>, 389 F.3d 142, 151 (5th Cir. 2004). Nevertheless, the outcome of this appeal will most certainly affect the district court's treatment of the other claims.

5

**JURISDICTION AND STANDARD OF REVIEW**

To the extent that the district court's determination turns on a question of law, this court has jurisdiction to review a district court's denial of qualified immunity. <u>Johnson v. Johnson</u>, 385 F.3d 503, 528 (5th Cir. 2004), both as to federal and related state law claims. <u>Morin v. Caire</u>, 77 F.3d 116, 119-20 (5th Cir. 1996). We review de novo, according to the allegations, a district court's order denying a defendant's Rule 12(c) motion to dismiss based on qualified immunity. <u>Morin</u>, 77 F.3d at 120.[5] Dismissal is warranted "only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Id.</u>

**DISCUSSION**

Qualified immunity shields government officials performing discretionary functions from liability as well as from suit, <u>e.g.</u>, the costs and risks of pre-trial discovery and trial. <u>Babb v. Dorman</u>, 33 F.3d 472, 477 (5th Cir. 1994). Qualified immunity analysis is two-tiered. First, the court must determine whether the plaintiff sufficiently alleged a violation of a clearly established constitutional right. <u>Morin</u>, 77 F.3d at 120; <u>Anderson</u>, 184 F.3d at 443. If so, the court determines whether the defendants' conduct was objectively reasonable in light of law

---

[5]The standard applicable to a Rule 12(c) motion is the same as that applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. <u>Johnson</u>, 385 F.3d at 529.

clearly established at the time of the events giving rise to the suit.  Id.

In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation."  Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999).[6]  Distinct from the notice pleading standard embodied in Rule 8, the heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations."  Id.; see also Schultea v. Wood, 47 F.3d 1427, 1430 (5th Cir. 1995).  In the § 1983 context, this standard translates, inter alia, into the requirement that the plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."  Anderson, 184 F. 3d at 443.

**A.  Federal False Arrest and Detention Claim**

Officers Larsen and Mata contend that DeLeon's false arrest claim should be dismissed for failure to plead particularized facts that defeat probable cause, and failure to

---

[6]    See Anderson, 184 F.3d at 443 (finding that the Supreme Court's decision in Leatherman v. Tarrant County Narcorics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), did not abrogate the heightened pleading standard established in Elliott v. Perez, 751 F.2d 1472 (5th Cir. 1985), as to actions against government officials in their individual capacities).

allege their personal involvement in DeLeon's April 19, 2001, arrest.

Maintaining the sufficiency of his pleadings, DeLeon does not contest that probable cause for his arrest existed on that date. He, in fact, concedes that the officers who arrived on the scene, having been alerted to the confidential informant's tip (false or not) and informed by Officer DeLaPaz that DeLeon had just engaged in a drug transaction (true or not), had probable cause, on those bases, to arrest him. Red Br. at 10. He also waives the issue whether Officers Larsen and Mata had probable cause to test the substance found on his person. Rather, in his Complaint DeLeon asserts that Officer Larsen is liable for "falsely arresting and detaining Mr. DeLeon and causing to be prepared documentation falsely implicating Mr. DeLeon in the sale of illegal drugs, when no probable cause or justification existed for such actions." R. at 93-94. Significantly, contrary to the district court's finding, DeLeon's Complaint does not assert a false arrest and detention claim under state (or federal) law against Officer Mata.

As to Officer Larsen, DeLeon has failed to state a claim for constitutional violation of his right to be free from false arrest. His factual allegations do not bring Officer Larsen within the purview of his false arrest claim. The only particularized factual allegation against Officer Larsen (and Mata) is that he (and Mata) allegedly field tested the white powder substance and reported that it tested positive for cocaine. This is the only act

8

that DeLeon attributes to the Officers, but according to his own allegations, this act was unrelated to his false arrest. DeLeon alleges that he was observed by Officer DeLaPaz exchanging drugs for money with the confidential informant, was apprehended by an unnamed police officer(s), searched by an unnamed police officer(s) who seized a baggie of white powder from his pants pocket, accused of selling cocaine, and then arrested. (First Am. Complaint, ¶ 16). According to his sole factual allegation against Officers Larsen and Mata (¶ 22), the allegedly false field test for cocaine has no connection to the initial arrest but instead relates to the allegedly false arrest warrant affidavit executed by Officer DeLaPaz.

DeLeon does not allege that Officer Larsen (or Mata) participated in his initial arrest on April 19, nor does he allege that Officer Larsen (or Mata) participated in any way in the events leading up to that arrest. Consequently, his contention that Officers Larsen (and Mata) "were the producing cause of [his] wrongful and unlawful arrest . . .," see Red Br. at 9, is unsupported by the factual allegations stated in his Complaint.

DeLeon also alleges, however, that Larsen is within the purview of a false detention claim on the theory that Larsen's false reporting on April 19, 2001, led, in part, to the arrest warrant by which he was taken into custody on June 11 and held for three more months. (This is a generous reading of a vague complaint.) Unfortunately for DeLeon, the claim still fails for

9

lack of particularity. This court addressed arguments of a similar nature in Morin, supra. There, the court found that the plaintiff's allegations — for example, that the defendants "knew or should have known that the statements of [another person allegedly involved in the asserted violations] [sic] were false" — failed to state a claim under § 1983 for lack of specific factual allegations to support these conclusions. Morin, 77 F.3d at 121. DeLeon's Amended Complaint alleges factually that Larsen (and Mata) "allegedly" field tested the "white powder" and concluded it was cocaine. (¶ 22). Later, it states conclusionally that Larsen caused documentation to be prepared falsely implicating DeLeon (¶¶ 48, 49, 50).[7] The Complaint suffers deficiencies similar to those in the complaint in Morin. To start, DeLeon's conclusory allegations are not as particularized as those in Morin. Instead of alleging unreliability and collusion in his Complaint, DeLeon argues these claims in briefing only. It is only in argument that DeLeon claims that "[c]learly, Mata and Larsen were either acting in concert with DeLaPaz in his efforts to violate clearly established law, or Larsen and Mata failed and refused to perform the tasks for which they were hired, again resulting in a violation of clearly established law." See Appellee's. Br. at 3, 7, 10. Nowhere in his complaint does DeLeon allege that Officers Larsen

---

[7]As to Mata, the Complaint purports only to state claims for defamation (¶ 51) and malicious prosecution (¶ 54). As we note supra, Officer Mata does not brief these claims and has waived them.

and Mata conspired with Officer DeLaPaz to violate his rights or acted with such incompetence that they should be stripped of qualified immunity. The Complaint does not allege that the officers did not conduct a field test at all; nor does it allege that the field test was negative and they falsely reported the result as positive; nor does it allege that their field testing was so incompetent that no reasonable officer could have relied on its results.

Counsel's attempt to inject a failure to train claim into the case at oral argument, presumably as a last-ditch effort to defeat qualified immunity or probable cause by demonstrating plain incompetence, fails, at the least, for the complete absence of factual allegations in his Complaint regarding improper training or improper performance of police testing procedures. DeLeon's only other Complaint allegation of falsity is that "any allegations made by any officer to the contrary [of his denials] are false." (¶ 41). R. at 92. DeLeon's attempt to impute to Officers Larsen (and Mata) the particular allegations against Officer DeLaPaz, citing <u>Grandstaff v. City of Borger</u>, 767 F.2d 161, 168 (5th Cir. 1985), does not comport with the heightened pleading standard applicable in cases involving qualified immunity defenses.

### B. State Law Malicious Prosecution Claim

Officers Larsen and Mata assert that any federal cause of action for malicious prosecution by DeLeon is foreclosed by circuit

11

precedent.  See Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003) (en banc).  His malicious prosecution claim, however, is founded in state law, to which Castellano is inapplicable.  Because the Officers have not briefed state law, we decline to rule on an inadequately briefed issue.

## CONCLUSION

Based on the foregoing discussion, this court REVERSES the district court's denial of immunity to Officers Larsen and Mata for DeLeon's false arrest and detention claims, and we REMAND WITH INSTRUCTIONS TO DISMISS these claims.  The appeal is DISMISSED insofar as it relates to the Officers' inadequately briefed challenge to the sufficiency of pleading of DeLeon's state law claims.

**REVERSED IN PART, REMANDED IN PART, and DISMISSED IN PART.**