REVISED – December 30, 1999

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-30978

REXFORD KIPPS, CAROL KIPPS AND KYLE KIPPS,

Plaintiffs-Appellants,

versus

JAMES CAILLIER, RAY AUTHEMENT,
NELSON J. SCHEXNAYDER, JR., AND NELSON STOKLEY,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

December 6, 1999

Before WIENER, DeMOSS and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Plaintiffs appeal the district court's orders denying their motion *in limine*, dismissing the case for failure to state a claim and granting defendants' motion for summary judgment. We VACATE in part and AFFIRM in part.

**FACTUAL HISTORY AND PROCEEDINGS BELOW**

Rexford Kipps ("Kipps") was an assistant football coach at the University of Southwestern Louisiana ("USL") for approximately eleven years. Kipps's son, Kyle Kipps ("Kyle"), was a talented football player in southern Louisiana. Kyle was actively recruited by several universities in 1996 and 1997.

In March of 1996, Nelson Stokley ("Stokley"), USL's head football coach, told Kipps that if Kyle did not attend USL, then he was to attend a college or university outside of Louisiana. Stokley warned Kipps that under no circumstances was Kyle to attend a Louisiana university other than USL.

On February 2, 1997, Kyle notified Stokley that he had orally committed to attend Louisiana State University ("LSU") on a football scholarship and that this commitment would soon be reduced to writing. The next day, Stokley advised Kipps that he was to forbid Kyle to memorialize the oral commitment to play football for LSU. Kipps responded that he would not (indeed, could not) command his son to refuse to reduce the verbal commitment to writing.

Based on Kyle's decision to attend LSU, Stokley terminated Kipps's employment with USL. In a February 20, 1997, letter, Nelson Schexnayder, Jr. ("Schexnayder"), USL Director of Athletics, advised Kipps, based on Stokley's recommendation, that Kipps's employment with USL would be terminated effective June 30, 1997. Ray Authement ("Authement"), President of USL, was provided with a copy of this letter and subsequently approved Kipps's termination. Additionally, James Caillier ("Caillier"),

President of the Board of Trustees for Louisiana State Colleges and Universities approved Kipps's termination.

On July 22, 1997, plaintiffs instituted an action against Stokley, Schexnayder, Authement and Caillier, in their individual

2

capacities, asserting, *inter alia*, constitutional claims and Louisiana state law claims. On August 28, 1997, defendants Stokley, Schexnayder and Authement filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). This motion was amended shortly thereafter to add Caillier.

On October 31, 1997, the district court denied defendants' motion to dismiss the claims asserted under 42 U.S.C. § 1983 (1994) and granted defendants' motion as to the pendent state law claims under LA. CIV. CODE ANN. art. 2315.6 (West 1999) and LA. REV. STAT. ANN. § 23:631 (West 1999).

Stokley, Schexnayder and Authement next filed a motion for summary judgment pursuant to FED. R. CIV. P. 56, asserting, *inter alia*, that the at-will employment status of Kipps precluded any wrongful termination action; that the defendants were entitled to qualified immunity; and that Kipps's termination was justified due to the effect that Kyle's choice of colleges would have on USL's ability to recruit athletes and on alumni relations. The next day, these defendants also filed a motion for sanctions against plaintiffs' counsel. On March 27, 1998, Caillier filed a summary judgment motion asserting, *inter alia*, that he did not participate in Kipps's termination and that Kipps's at-will employment status precluded a wrongful termination claim. Plaintiffs moved to oppose the summary judgment motions and the motion for sanctions. In addition, plaintiffs filed motions *in limine* to exclude, *inter alia*, the following: (1) the qualified immunity defense and (2) the justification defense.

3

The district court denied plaintiffs' motions *in limine* and granted Stokley, Schexnayder and Authement's motion for summary judgment on qualified immunity grounds. The district court granted appellee Caillier's motion for summary judgment on similar grounds and granted defendants' motion for sanctions against plaintiffs' counsel.

Plaintiffs invoke the jurisdiction of this court pursuant to 28 U.S.C. § 1291 (1994) and present the following issues for interlocutory appeal:

1.  Did the district court commit reversible error in dismissing plaintiffs' claims based on the theory that "Qualified Immunity" exempted the defendants from liability?

2.  Did the district court commit reversible error in refusing to grant plaintiffs' Motion to Exclude any Evidence as to the Defense of Justification?

3.  Did the district court commit reversible error when it sanctioned plaintiffs' counsel?

4.  Did the district court commit reversible error in dismissing plaintiffs' pendant state law claims under LA. CIV. CODE ANN. art. 2315.6 (West 1999)?

## SECTION 1983 CLAIM

The district court granted defendants' summary judgment and dismissed plaintiffs' constitutional claims based on the doctrine of "Qualified Immunity." We review a grant of a summary judgment *de novo*. *See Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). Summary judgment shall be entered in favor of the moving party if the record, taken as a whole, "show[s] that there is no genuine issue as to any material fact and that the moving

4

party is entitled to a judgment as a matter of law."  FED. R. CIV.
P. 56(c).  A factual dispute is "genuine" where a reasonable jury
could return a verdict for the nonmoving party.  *See Crowe v.
Henry*, 115 F.3d 294, 296 (5th Cir. 1997).  If the record, taken
as a whole, could not lead a rational trier of fact to find for
the non-moving party, then there is no genuine issue for trial.
*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
574, 597 (1986); *Scales v. Slates*, 181 F.3d 703, 708 (5th Cir.
1999).

## Qualified Immunity

Public officials acting within the scope of their official
duties are shielded from civil liability by the qualified
immunity doctrine.  *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S.
800, 815-19 (1982); *Morris v. Dearborne*, 181 F.3d 657, 665 (5th
Cir. 1999).  Government officials are entitled to qualified
immunity "insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known."  *Harlow*, 457 U.S. at 818.[1]

In order to establish that the defendants are not entitled
to qualified immunity, plaintiffs must satisfy a three-part test.
*See, e.g.*, *Morris*, 181 F.3d at 665.  First, "[a] court evaluating

---

[1]  With the announcement of this wholly objective standard,
the Supreme Court rejected the subjective, good faith element of
the qualified immunity defense adopted in *Wood v. Strickland*, 420
U.S. 308, 321 (1975).  *Cf. Schultea v. Wood*, 47 F.3d 1427, 1431
(5th Cir. 1995) ("The Court's deletion of the subjective element
of good faith rested on the pragmatic judgment that it
'frequently has proved incompatible with our admonition . . .
that insubstantial claims should not proceed to trial.'")
(quoting *Harlow*, 457 U.S. at 815-16)).

a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of a constitutional right at all." *Wilson v. Layne*, --- U.S. ---, ---, 119 S. Ct. 1692, 1697 (1999); *see also Morris*, 181 F.3d at 665. Second, the court must "determine whether that right was clearly established at the time of the alleged violation." *Wilson*, --- U.S. at ---, 119 S. Ct. at 1697. Finally, the court "must determine whether the record shows that the violation occurred, or at least gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right." *Morris*, 181 F.3d at 666 (quoting *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 1999)).[2] If it is determined that the official's conduct was unconstitutional, then the court must decide whether the conduct was nonetheless "objectively reasonable." *See Eugene v. Alief Indep. School Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Assuming *arguendo* that defendants violated Kipps's clearly established constitutional liberty interest[3] in familial association,[4] the resolution of this issue turns on whether the defendants' actions were "objectively reasonable." Because we

---

[2] This prong is not at issue since defendants do not challenge the core facts as asserted by plaintiffs.

[3] In addition to the issues we address in this opinion, plaintiffs claim that the district court committed an additional error when it converted plaintiffs' claimed liberty interest into a property interest. Because we assume the existence of such interest, it is not necessary for us to reach this question.

[4] Whether a constitutional liberty interest is implicated by the facts of this case is highly questionable.

6

find that defendants' actions were objectively reasonable, we affirm the district court's dismissal of Kipps's 1983 claim on the basis of qualified immunity.

Even if defendants violated Kipps's clearly established constitutional right, they are still entitled to qualified immunity if their actions were objectively reasonable. "Objective reasonableness is a matter of law for the courts to decide, not a matter for the jury." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999); *see also Wilson*, --- U.S. at ---, 119 S. Ct. at 1699 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action.") (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

The record indicates that Kipps was fired because his son chose to play football for a Louisiana school other than USL. Notwithstanding the defendants' subjective motivation and belief as to the lawfulness of their conduct,[5] we find the defendants'

---

[5] Defendants appear to argue on brief that because Kipps was an at-will employee, it was reasonable to fire him for any reason whatsoever. Kipps's status as an at-will employee is irrelevant to our analysis of this issue. It is well established in this Circuit that public authorities may not discharge an at-will employee for exercise of his constitutionally protected rights.

> Although public school authorities may discharge an employee unprotected by a reasonable expectation of continued employment for any job-related reason or for no reason at all, it is well established that they may not do so for a reason which infringes "constitutionally protected rights."

motivation for terminating Kipps was objectively reasonable. *See*

*Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)

(holding that "even an officer who subjectively intends to act

unreasonably is entitled to immunity if his actions are

objectively reasonable") (citing Malley v. Briggs, 475 U.S. 335,

341 (1986)).  Defendants' motivation, according to the record in

this case, was to mitigate the damage that Kyle's attendance at

LSU as opposed to USL would have on alumni relations and

recruiting efforts.[6]

The summary judgment record of this appeal contains no facts

---

*Brantley*, 718 F.2d at 1358 (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).  Defendants' counsel conceded this point at oral argument.  Furthermore, the policy of the Board of Trustees allowing for the firing of an at-will employee, as interpreted by defendants, is also irrelevant to our analysis of this issue. "Such a policy, of course, could not make reasonable a belief that was contrary to a decided body of case law." *Wilson*, --- U.S. at ---, 119 S. Ct. at 1701.  *See also Babb*, 33 F.3d at 478 n.8 (holding that city policy regarding arrest procedure is irrelevant to qualified immunity analysis).

[6]  Similar considerations are part of the balancing test inherent in defendants' alternative defense of justification. Because we affirm the district court's dismissal of plaintiffs' claims based on qualified immunity, we do not speak to its ruling on justification except to comment on a key element of the defense: the proffered expert opinion of Spike Dykes.  Under this Circuit's pre-*Kumho Tire* interpretation of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the testimony of Mr. Dykes would have been inadmissible because it is speculative and not amenable to scientific verification. *See Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998) (en banc).  If anyone is an expert in recruiting football talent and alumni relations, Spike Dykes is such a person.  The test of admissibility in Rule 702 is a flexible one that must be tailored to the facts of each case. *See Kumho Tire v. Carmichael*, --- U.S. ---, ---, 119 S. Ct. 1167, 1175 (1999) ("Daubert makes clear that the factors it mentions do not constitute a 'definitive checklist or test.'") (quoting *Daubert*, 509 U.S. at 593 ("Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist.")).

8

upon which we could find that defendants' actions were objectively unreasonable.  The district court's ruling that all defendants are entitled to qualified immunity is AFFIRMED.

## SANCTIONS AGAINST PLAINTIFFS' COUNSEL

Plaintiffs assert that the district court erred in sanctioning plaintiffs' counsel ("Simon") for a letter Simon sent to potential defendants in connection with this case.  Although the magistrate judge concluded that Simon's behavior did not merit sanctions, she suggested that he write an amendatory letter "to explain . . . any ambiguities regarding the intent and tone of his original letter."  The district court granted the defendants' motion for sanctions and required Simon to send the amendatory letter.  Simon sent the mandated letter, but nonetheless appeals the district court's decision.  Because we hold that the district court abused its discretion, we VACATE its ruling on this issue.

The imposition of sanctions by a district court is reviewed for abuse of discretion.  *See Chaves v. M/V Media Star*, 47 F.3d 153, 156 (5th Cir. 1995).  "A court abuses its discretion when its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Id.* (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990)).

Although a district court has inherent power to issue sanctions against attorneys for bad faith conduct in litigation, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991), the threshold for the imposition of such sanctions is high.  *See*

9

*Chaves*, 47 F.3d at 156. "In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'" *Id.*

The district court abused its discretion in imposing sanctions on Simon. Not only did the district court fail to make a specific finding as to the bad faith of Simon's actions, but its sanctioning order was issued in the face of the magistrate's finding that Simon's actions were *not* "a bad faith attempt to disrupt or delay these proceedings." Because a specific finding as to the bad faith of Simon's actions was not made, and indeed, one could not be made from this record, we VACATE the district court's order imposing sanctions on Simon.

### "BYSTANDER RECOVERY" CLAIM

Plaintiffs assert that the district court committed reversible error in dismissing their pendent state law claim under article 2315.6 of the Louisiana Civil Code for failure to state a claim upon which relief can be granted.[7] We disagree.

A Rule 12(b)(6) order of dismissal for failure to state a claim on which relief can be granted is reviewed *de novo*, and

---

[7] Appellee Caillier asserts that we lack appellate jurisdiction over this claim because plaintiffs' appeal of this ruling was untimely. *See* FED. R. APP. P. 4(a)(1)(A). We disagree. Plaintiffs' notice of appeal was filed well within the required thirty days of the district court's August 18, 1998 order. That notice of appeal covers the district court's August 18, 1998 rulings, the district court's August 28, 1998 rulings and "all subsidiary rulings occurring during the pendency of this action." Because the district court's October 31, 1997, 12(b)(6) ruling is not subject to Rule 54(b), it falls within the purview of "subsidiary rulings occurring during the pendency of this action." Therefore, our jurisdiction is proper.

10

"will not be affirmed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

Article 2315.6 of the Louisiana Civil Code is a "bystander recovery" statute that allows certain "persons who view an event causing injury to another person, or who come upon the scene of an even soon thereafter, [to] recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury." LA. CIV. CODE ANN. art. 2315.6 (West 1999). We are conscious of the fact that Louisiana's highest court is the appropriate place to seek the proper interpretation of this statute. *See Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 492 (5th Cir. 1999) ("If the state through its highest court has spoken clearly in interpreting its law, it is not within the authority of this Court to reinterpret that law.") (Parker, J., dissenting). The Louisiana Supreme Court recently "[spoke] clearly in interpreting" this statute.

In *Trahan v. McManus*, 728 So. 2d 1273 (La. 1999), *rev'g* 689 So. 2d 696 (La. Ct. App. 1997), the parents of a 36-year-old patient, Terry Trahan, who died after he was negligently discharged from the hospital, brought suit for bystander damages against the doctor who discharged their son. Several hours after being brought home from the hospital, Terry complained of severe pain and his condition deteriorated. He died in the presence of

11

his parents approximately seven hours after his discharge from the hospital.

The Louisiana Supreme Court held that, assuming the doctor's negligent omission was the "event" that caused Terry Trahan's injury, it "was not an injury causing-event in which the claimant was contemporaneously aware that the event caused harm to the direct victim, as required for recovery of Article 2315.6 damages." *Trahan*, 728 So. 2d at 1280. In reaching this decision, the *Trahan* Court adopted the reasoning set forth in *Lejeune v. Rayne Branch Hosp.*, 556 So. 2d 559 (La. 1990), and made the following statement: "The requirements of Article 2315.6, when read together, suggest a need for temporal proximity between the tortious event, the victim's observable harm, and the plaintiff's mental distress arising from an awareness of the harm caused by the event." 728 So. 2d at 1279.

The facts interpreted in plaintiffs' favor show that neither Carol nor Kyle actually viewed or "[came] upon the scene" of the event-causing injury (Kipps's termination), but were merely "notified" or "informed" of the event after it occurred.[8] They do not fit within the framework of Article 2135.6 or the case law interpreting it. Therefore, the district court's dismissal of

---

[8] We do not comment on the second prong of Article 2315.6: whether the harm suffered by Kipps was traumatic enough "that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience." LA. CIV. CODE ANN. art. 2315.6(B) (West 1999). *Cf. Irvin v. Foti*, No. 99-1526, 1999 WL 504916, at *5 (E.D. La. July 13, 1999) ("[W]itnessing the arrest of a child, while traumatic is simply not the kind of injury contemplated by Art. 2315.6.").

12

the plaintiffs' "bystander recovery" claim is AFFIRMED.

## CONCLUSION

For the foregoing reasons, we VACATE in part and AFFIRM in part the decision of the district court.

DeMOSS, Circuit Judge, specially concurring:

I concur in the result reached by the majority opinion as to all issues.

I write separately to express my view that our decision affirming the district court's grant of qualified immunity should be based upon the ground that the Kippses failed to state a cause of action for the violation of a clearly established constitutional right, rather than upon the ground that Schexnayder's decision to fire Kipps merely because Kipps' son decided upon another university was objectively reasonable as a matter of law. Whatever the factual or legal parameters of the amorphous "constitutional liberty interest in familial association" that the majority opinion assumes into existence, I find no support in the case law for the proposition that such a right was clearly established when Kipps was fired or even that such a right is clearly established today. In sum, I agree that the defendants are entitled to qualified immunity as a matter of law, but I would affirm on the much stronger ground that the Kippses failed to state a claim for violation of a clearly established constitutional right.

I write also to express my dismay that the majority has used this opportunity to "comment on a key element" of the defendants' alternative justification defense, notwithstanding the majority's disclaimer that such comments are unnecessary to this Court's

14

disposition and "do not speak" to the district court's actual ruling on the justification defense. Given the majority's concession that it need not, and indeed does not, reach the issue, see Majority Opinion at 9 n.6, I would avoid "commenting" on the law or the facts governing that defense by deleting footnote 6 in the majority opinion. The majority has taken a contrary approach, choosing to interject its own and rather simplistic view of the complex issues raised by the need to harmonize the Supreme Court's dispositions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), and *Kumho Tire v. Carmichael,* __ U.S. __, 119 S. Ct. 1167, 1175 (1999). That such an approach is inappropriate is perhaps best illustrated by the majority's decision to elevate Coach Dykes (as a matter of law and presumably for all future cases) to the status of an expert based upon some perceived change in the law arising from *Kumho*. *Kumho* was not decided until after briefing was complete in this case, and there is no adversarial briefing on the import of *Kumho*. Moreover, the Court's determination that the defendants are entitled to qualified immunity makes any "comments" on the effect of *Kumho* immaterial to the Court's decision. In sum, footnote 6 is nothing but gratuitous dicta which has no place in and forms no part of our decision in this case.

15