**Raheela ASHFAQ, M.D., Plaintiff,**

v.

**Ron ANDERSON, M.D., Defendant.**

**Civil Action No. 3:08–CV–1232–B.**

United States District Court,
N.D. Texas,
Dallas Division.

March 16, 2009.

Charla G. Aldous, Aldous Law Firm, Jeffrey H. Rasansky, Robert Edward Wolf, Jr., Rasansky Law Firm, Dallas, TX, for Plaintiff.

Thomas L. Case, Sherri Turner Alexander, Matthew R. Scott, Bell Nunnally & Martin LLP, Dallas, TX, for Defendant.

## MEMORANDUM ORDER

JANE J. BOYLE, District Judge.

Plaintiff Raheela Ashfaq, M.D. (hereinafter, "Dr. Ashfaq") brings this action against Defendant Ron Anderson, M.D. (hereinafter, "Dr. Anderson"), alleging violations of the Civil Rights Act, 42 U.S.C. § 1983, and various state law causes of action. Before the Court is Dr. Anderson's Motion to Dismiss (doc. 10), on the basis of qualified immunity. Having considered the motion to dismiss and the briefing of the parties, the Court is of the opinion that the Motion should be and hereby is **GRANTED.**

## I.

## BACKGROUND

This case involves medical professionals working for the University of Texas Southwestern Medical Center (hereinafter, "UTSW") and Parkland Health and Hospital System (hereinafter, "Parkland"). (Compl.) UTSW and Parkland entered into a Master Services Agreement (hereinafter, the "MSA") whereby UTSW physicians provide medical, administrative, and educational services at the Parkland facilities. (*Id.* at ¶ 49.)

Dr. Ashfaq is employed as a professor of pathology at UTSW. (*Id.* at ¶ 8.) Throughout her tenure, Dr. Ashfaq has served in various positions of leadership and supervision at UTSW and its affiliated hospitals, including Parkland. (*Id.* at ¶ 9.) Most recently, Dr. Ashfaq held appointments as the director of the Cytopathology Fellowship Program at UTSW and the Cytopathology Laboratory and the Fine Needle Aspiration Clinics at Parkland. (*Id.*) Her removal from these appointments is the subject of this suit.

In September 2007, Parkland's lead commodity buyer asked Dr. Ashfaq to sit on a Parkland selection committee and evaluate bids being taken from companies seeking to supply Parkland with equipment and supplies for a liquid-based pap test. (*Id.* at ¶¶ 17, 32.) Upon agreeing to participate on the committee, Dr. Ashfaq was asked to a sign a Non–Disclosure Agreement and Conflict of Interest Statement. (*Id.* at ¶¶ 17–8.) She merely skimmed this document before signing and assenting to its terms. (*Id.* at ¶ 17.)

While sitting on the selection committee, Dr. Ashfaq scored a proposal submitted by Hologic/Cytyc. (*Id.* at ¶ 21.) When scoring this proposal, Dr. Ashfaq failed to disclose that she had previously served on Hologic/Cytyc's speakers bureau and received honoraria from Hologic/Cytyc. (*Id.* at 21–3.) On November 19, 2007, Dr. Ashfaq attended a lecture on Parkland's ethics policies and procedures. (*Id.* at ¶ 22.) After attending this lecture, Dr. Ashfaq was concerned about her prior failure to disclose her history with Hologic/Cytyc. (*Id.* at ¶ 23.) Accordingly, she contacted Nancy Merritt (hereinafter, "Merritt"), Parkland's Compliance Officer, and Debbie Perrault, the Lab Director, to voice her concerns and ask that her scores on the Hologic/Cytyc proposal not be counted. (*Id.* at ¶¶ 23–4.) Her scores were not counted, and Hologic/Cytyc was never awarded the contract. (*Id.* at ¶ 24.)

Nevertheless, Merritt and others allegedly initiated an investigation into Dr. Ashfaq's conflicts of interest, and informed Michael Silhol (hereinafter, "Silhol"), Parkland's general counsel. (*Id.* at ¶¶ 28–30.) In late January 2008, Silhol determined that Dr. Ashfaq should be removed from her appointments at Parkland due to the appearance of impropriety brought about by Dr. Ashfaq's conflicts of interest. (*Id.* at ¶ 31.) Silhol drafted a letter to this effect, and forwarded it to Dr. Anderson, (*id.*), Parkland's President and Chief Executive Officer, (*Id.* at ¶ 6), for his signature. Dr. Anderson signed the letter and sent it to the Executive Vice President for Business Affairs at UTSW. (*Id.*) In short, Dr. Anderson's letter stated that Dr. Ashfaq failed to abide by Parkland's Code of Conduct and Ethics, (*id.*), and demanded that Dr. Ashfaq be replaced with another UTSW physician, (*Id.* at ¶ 32). Specifically, the letter contends that Dr. Ashfaq had a "clear and very serious conflict of interest that [she] failed to disclose[,]" (*id.*), bringing "disrepute to Parkland's activities and reputation[,]" (*Id.* at ¶ 33). In response to the letter, doctor Errol Friedberg (hereinafter, "Dr. Friedberg"), the chair of the pathology department at UTSW, removed Dr. Ashfaq from her appointments as Director of the Pathology Fellowship Program at UTSW and Director of the Cytopathology Laboratory and Fine Needle Aspiration Clinics at Parkland. (*Id.* at ¶ 38.) Dr. Friedberg further admonished Dr. Ashfaq to restrict her professional activities to locations outside of Parkland. (*Id.*) As a result of these removals, Dr. Ashfaq suffered no salary reduction, as she continues to be employed as a professor of pathology at UTSW. (*See id.* at ¶ 8.)

Displeased with this result, Dr. Ashfaq insists that her removal from her appointments was wrongful. To this end, she points to the MSA, alleging that section 2.5 outlines procedures that must be followed before a UTSW physician can be removed from a position at Parkland. (*Id.* at ¶¶ 39–41.) These procedures allegedly require Parkland to provide written notice of its dissatisfaction with a particular physician. (*Id.* at ¶ 39.) UTSW and Parkland are then to attempt and resolve any differences to the satisfaction of both parties. (*Id.*) In contrast, Dr. Ashfaq avers, her removal was arbitrary and unilateral. (*Id.*)

On July 18, 2008, Dr. Ashfaq filed this action praying for damages for the alleged violation of her civil rights under 42 U.S.C. § 1983, maintaining that her removal deprived her of a constitutionally protected property interest without due process in violation of the Fourteenth Amendment of the United States Constitution. (*Id.* at ¶¶ 47–8.) Dr. Ashfaq also raises claims for intentional infliction of emotional distress, (*Id.* at ¶¶ 66–9), tortious interference, (*Id.* at 70–2), and defamation arising out of statements contained in Dr. Anderson's letter, (*Id.* at 58–65). In response, Dr.

Anderson filed the instant motion to dismiss, claiming he is entitled to qualified immunity. (Def.'s Mot. to Dismiss.) Dr. Anderson's motion is ripe, and the Court now turns to the merits of its decision.

## II.

## ANALYSIS

### A. *Legal Standard*

 The Federal Rules of Civil Procedure provide for the dismissal of an action, upon motion of the defendant, when a plaintiff's complaint fails "to state a claim upon which relief can be granted." FED. R.CIV.P. 12(b)(6). In considering such a motion to dismiss, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir.2004). A motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss, the complaint must contain plausible grounds to show an entitlement to relief as opposed to mere "labels and conclusions." *Id.,* 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level [ . . . ] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Southwestern Bell Tel., LP v. City of Houston,* 529 F.3d 257, 260 (5th Cir.2008) (quoting *Twombly,* 127 S.Ct. at 1965).

### B. *Qualified Immunity*

 "As a general rule, government officials performing discretionary functions are entitled to qualified immunity." *Morris v. Dearborne,* 181 F.3d 657, 665 (5th Cir.1999) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ("government officials performing discretionary functions generally are granted a qualified immunity . . ."). Government officials fall within this general rule "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* —— U.S. ——, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727); *Kipps v. Caillier,* 197 F.3d 765, 768 (5th Cir.1999) (same). Accordingly, federal courts within the Fifth Circuit conduct a three-step analysis in assessing whether a government official is entitled to qualified immunity. *Kipps,* 197 F.3d at 768; *Morris,* 181 F.3d at 665. First, the courts look to whether a plaintiff has alleged a constitutional deprivation at all. *Kipps,* 197 F.3d at 768; *Morris,* 181 F.3d at 665. Next, "the court must 'determine whether that right was clearly established at the time of the alleged violation.' " *Kipps,* 197 F.3d at 768 (quoting *Wilson,* 526 U.S. at 609, 119 S.Ct. 1692). Finally, if the court answers the first two queries in the affirmative, it must assess whether the government actor's conduct was "nonetheless 'objectively reasonable.' " [1] *Kipps,* 197 F.3d

---

1. Since 2001, this analytical sequence was mandated by the Supreme Court. *Pearson,* 129 S.Ct. at 815–16; *Saucier v. Katz,* 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In *Pearson,* however, the Supreme Court modified its mandate, informing that the sequence in which federal courts conduct the qualified immunity analysis is left to the lower courts' discretion. *Pearson,* 129 S.Ct.

at 818. In so holding, the Court recognized that although *Saucier's* "rigid order of battle" is no longer mandatory, "it is often beneficial." *Pearson,* 129 S.Ct. at 818–19. The Court, in its discretion, finds that this is true of the instant action—the sequential analysis enumerated in *Saucier* provides the most logical analytical process.

at 768; *Morris,* 181 F.3d at 666 (citing *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993)). Courts are to conduct the foregoing analysis early in the litigation, for qualified immunity is an immunity from the incidents of suit, and not merely an immunity from liability. *Pearson,* 129 S.Ct. at 815; *Streetman v. Jordan,* 918 F.2d 555, 556 (5th Cir.1991).

### C. Dr. Ashfaq's 42 U.S.C. § 1983 Claim

Dr. Ashfaq maintains that in requesting she be removed from her appointments at Parkland, Dr. Anderson deprived her of a constitutionally protected property interest without due process. To prevail on her claim, Dr. Ashfaq must make a showing that her appointments at Parkland amount to a constitutionally protected property interest. *See, e.g., Blackburn v. Marshall,* 42 F.3d 925, 935 (5th Cir.1995). Accordingly, the Court first looks to whether Dr. Ashfaq has alleged a constitutional deprivation at all.

■■■■ For an employment benefit to rise to the level of a property interest, "a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." *Daly v. Sprague,* 675 F.2d 716, 726 (5th Cir.1982) (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The existence and contours of constitutionally protected property interests are defined by state law. *Schoppa Family v. Kupersmith,* 54 Fed.Appx. 592, 2002 WL 31730375, at *4 (5th Cir.2002)

Moreover, the Court notes that though the Supreme Court has consistently spoken of the qualified immunity analysis as a two-step process, the Fifth Circuit has long recognized that the high Court's analytical framework should be dissected into three steps. *See, e.g.,*

(citing *Roth,* 408 U.S. at 577, 92 S.Ct. 2701); *Daly,* 675 F.2d at 726 (same).

■■■■ In the State of Texas, employment is at-will unless an employer "unequivocally indicate[s] a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Schoppa Family,* 2002 WL 31730375, at *4 (quoting *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998)). Thus, mutually understood employment contracts, the terms of which state that an employee may be terminated only for cause, give rise to a property interest. *See Schoppa Family,* 2002 WL 31730375, at *4. Such a property interest carries with it the expectation of a salary; however, as an employment agreement becomes more detailed, the linkage between contractual understandings and the Due Process Clause weakens. *Id.* at *4-*5; *see also Jett v. Dallas Indep. Sch. Dist.,* 798 F.2d 748, 754 (5th Cir.1986), *modified on other grounds,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). For this reason, it is recognized that "not *every* interference with contractual expectations" offends the Constitution. *See San Bernardino Physicians' Serv. Medical Group, Inc. v. County of San Bernardino,* 825 F.2d 1404, 1408 (9th Cir.1987) (emphasis in original). For example, the Fifth Circuit has repeatedly recognized that a public employee may hold a property interest in her employment, but not in the non-economic benefits of that employment such as serving in a particular office or capacity. *See Schoppa Family,* 2002 WL 31730375, at *5 n. 11 (enumerating instances of public employees not constitutionally entitled to specific work assignment).

*Carlton v. Fearneyhough,* — Fed.Appx. —, —, 2008 WL 686595, at *2 (5th Cir.2008) ("In the Fifth Circuit, we employ a three-part inquiry to determine whether an officer enjoys qualified immunity."); *Kipps,* 197 F.3d at 768.

Dr. Ashfaq insists that the MSA amounts to a mutually explicit agreement that she could not be removed from her appointments at Parkland without following the procedures outlined therein. However, noticeably absent from Dr. Ashfaq's pleading are any allegations that her employment with UTSW has suffered. Indeed, she informs that she still holds her position as a professor of pathology at UTSW, and fails to allege that she has experienced a reduction in salary due to her removal from her Parkland appointments. As the Fifth Circuit has recognized on more than one occasion, physicians employed by the state hold a property interest in the economic benefits of their employment, but not to non-economic benefits such as a title, laboratory space, or clinical access privileges. *See Schoppa Family*, 2002 WL 31730375, at *5 ("Finally, the loss of her title, supply budget, laboratory space, and support for a technician did not reduce [plaintiff's] income. Because [plaintiff] had no cognizable property interest ... she has no due process claim"); *Daly*, 675 F.2d at 726–27 (holding a physician plaintiff did not have a property interest in his clinical access privileges). For these reasons, the Court finds that Dr. Ashfaq has failed to plead sufficient facts to allege a constitutional deprivation. At best, her complaint asserts that she was removed from an uncompensated work assignment. Grievances of this nature are simply not actionable under the Constitution. *See, e.g., Schoppa Family*, 2002 WL 31730375, at *4–*5 (finding a publically employed physician did not have a property interest in uncompensated title or laboratory privileges); *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 997 (5th Cir.1992) (en banc) (public employee did not have "a constitutionally protected property interest in the non-economic benefit of serving as superintendent"); *Daly*, 675 F.2d at 726–27 (stating publicly employed physi-

cian did not suffer deprivation of property interest when clinical privileges revoked); *Raju v. Rhodes*, 809 F.Supp. 1229, 1238–39 (S.D.Miss.1992) (holding physician employed by public medical school and removed as director of transplant program was not deprived of property interest when his salary was not decreased).

Even assuming *arguendo* that Dr. Ashfaq plead sufficient facts to state a cognizable property interest, the law in this respect is certainly not clearly established. To begin, the MSA is not an agreement between Parkland and Dr. Ashfaq; rather, it is an agreement between Parkland and Dr. Ashfaq's employer—UTSW. Dr. Ashfaq has not proffered, and the Court has not discovered, a single case where an agreement between one's employer and a third party vest an individual with a constitutional property interest. Consequently, Dr. Anderson could reasonably have concluded that his actions in asking for Dr. Ashfaq's removal were lawful "without treading on ground plainly protected by the Constitution[.]" *Schoppa Family*, 2002 WL at *5 n. 11.

Because Dr. Ashfaq has failed to allege a deprivation of a clearly established constitutional right, Dr. Anderson is entitled to qualified immunity. Accordingly, Dr. Ashfaq's § 1983 claim should be and hereby is **DISMISSED**. However, in light of the Fifth Circuit's directives to permit those initially failing to state a claim "the opportunity to amend or supplement the pleadings freely," *Wicks v. Miss. State Employment Serv.*, 41 F.3d 991, 997 (5th Cir.1995), the Court invites Dr. Ashfaq to file an amended complaint sufficient to overcome Dr. Anderson's defense of qualified immunity. Accordingly, Dr. Ashfaq's Motion for Leave to File First Amended Complaint (doc. 13) is hereby **GRANTED**. Dr. Ashfaq's amended complaint shall be

filed within seven (7) days of the date that this Order is entered. Although in issuing this order the Court intimates no decision as to the merits of Dr. Ashfaq's state law causes of action, she should re-allege any state causes that she desires to prosecute in her amended pleading. Finally, as discussed *supra*, qualified immunity is an immunity from suit and not solely an immunity from liability. Therefore, Dr. Anderson's Motion to Stay Discovery Pending Resolution of Qualified Immunity (doc. 9) is **GRANTED.** Thus, no discovery will take place in this action until Dr. Anderson requests, and this Court issues, a ruling on Dr. Anderson's defense of qualified immunity as it relates to Dr. Ashfaq's amended pleading.

## III.

### CONCLUSION

For the foregoing reasons, the Court is of the opinion that Dr. Anderson's motion to dismiss (doc. 10) and motion to stay discovery (doc. 9) should be and hereby are **GRANTED.** Moreover, because Dr. Ashfaq should have an opportunity to plead facts sufficient to overcome Dr. Anderson's qualified immunity defense, Dr. Ashfaq's motion for leave to file an amended complaint (doc. 13) is also **GRANTED.** Dr. Ashfaq is therefore directed to file her amended complaint within seven (7) days of the date this Order is filed.

**SO ORDERED.**