# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 9, 2020

Lyle W. Cayce
Clerk

No. 19-40158

JOHN PRIESTER, JR.; BETTIE PRIESTER,

*Plaintiffs—Appellants*,

*versus*

DEUTSCHE BANK NATIONAL TRUST COMPANY; SELECT PORTFOLIO SERVICING, INCORPORATED,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:16-CV-449

Before GRAVES, COSTA, and ENGELHARDT, *Circuit Judges.*

PER CURIAM:*

Appellants John and Bettie Priester ("the Priesters") obtained a home equity loan secured by a first lien on their residence in 2005. They stopped making payments on the loan about five years later, and a decade of litigation followed, engendering two previous opinions from this court. *See Priester v.*

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 19-40158

*JP Morgan Chase Bank, N.A.*, 927 F.3d 912, 913-14 (5th Cir. 2019); *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674 (5th Cir. 2013). The Priesters commenced this suit in state court, seeking a declaratory judgment that Appellees Deutsche Bank National Trust Company ("Deutsche Bank") and Select Portfolio Servicing, Inc. ("Select Portfolio") could not foreclose on their property because the loan and security instrument were void under the Texas Constitution. They also asserted claims for defamation, fraudulent concealment, fraud by non-disclosure, common-law fraud, negligent misrepresentation, breach of contract, and violations of the Texas Debt Collection Practices Act ("TDCPA"). Asserting diversity jurisdiction, Deutsche Bank and Select Portfolio removed the case to federal court and brought counterclaims for judicial foreclosure and equitable subrogation. Following a spate of motion practice and a bench trial, the district court entered final judgment dismissing the Priesters' claims and allowing the foreclosure to proceed. We AFFIRM.

## I.

In November 2005, the Priesters obtained a home equity loan from Long Beach Mortgage Company ("Long Beach"), encumbering their property in the amount of $180,000.[1] Under Texas law, borrowers execute two documents—each of which is a distinct obligation creating a right of foreclosure—to obtain a home equity loan: "(1) a promissory note that creates the borrower's legal obligation to repay the lender, and (2) a deed of trust that grants the lender a lien on the property as security for the debt."

---

[1] Long Beach later merged into Washington Mutual Bank, and JP Morgan Chase Bank, N.A. ("JP Morgan") subsequently acquired all of Washington Mutual Bank's assets. Eventually, JP Morgan transferred the deed of trust to Deutsche Bank, and Select Portfolio is the current servicer of the loan.

*Harris Cty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 549 (5th Cir. 2015).  The Priesters, on the same day as closing, also signed an affidavit stating, in relevant part, that they had signed the loan documents at the office of an attorney, the lender, or a title company as required by the Texas Constitution and that they had received notice concerning extensions of credit as required by Section 50(a)(6) of the Texas Constitution.  A notary public present when the Priesters signed the affidavit later testified at trial in this litigation that she gave them time to read the document, although they declined to read its entirety, and that she explained it to them but did not detail every line.  Five years after executing the loan, the Priesters asserted—for the first time and contrary to their affidavit—that they did not receive the required notice twelve days prior to closing and that they signed the loan in their home rather than in one of the constitutionally designated places.

The Priesters stopped making payments on their loan in 2010, contending that its origination violated the Texas Constitution.  Litigation ensued with JP Morgan, which was then the lienholder, ultimately reaching this court.  Making an *Erie* guess, we concluded that the Priesters' constitutional claim was barred by the statute of limitations.  *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674 (5th Cir. 2013).  Three years later—as, regrettably, sometimes happens—our guess turned out to be wrong when the Supreme Court of Texas interpreted Texas law differently and declined to apply the limitation period to the constitutional provision.  *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 547 (Tex. 2016); *see also Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 600 (5th Cir. 2017) (noting that "*Wood* made plain that our '*Erie* guess' in *Priester* was wrong").  On the same day it entered the decision in *Wood*, the Supreme Court of Texas also issued its ruling in *Garofolo v. Ocwen Loan Servicing, L.L.C.*, holding that Section 50(a) of the Texas Constitution creates a defense to foreclosure but does not give rise to an independent cause of action.  497 S.W.3d 474, 478

(Tex. 2016). More than a year after those decisions, the Priesters filed a Rule 60(b)(6) motion to vacate the final judgment dismissing their claims. The district court denied that motion and, in the interest of finality, we affirmed. *Priester v. JP Morgan Chase Bank, N.A.*, 927 F.3d 912, 913-14 (5th Cir. 2019).

In the meantime, JP Morgan assigned the obligation to Deutsche Bank and Deutsche Bank obtained a state court order permitting it to proceed with foreclosure. Attempting to stop enforcement of the foreclosure order, the Priesters commenced this litigation by initiating a separate proceeding in state court—naming as defendants Deutsche Bank, Select Portfolio, and several other defendants. Deutsche Bank and Select Portfolio asserted diversity jurisdiction to remove the case to federal court, claiming that the other (non-diverse) defendants should be disregarded for diversity jurisdiction purposes because they were improperly joined, and brought counterclaims for judicial foreclosure and, alternatively, equitable subrogation. The Priesters then filed two motions aimed at returning the case to state court. First, they moved to remand, averring that the district court lacked diversity jurisdiction because the notice of removal did not sufficiently plead improper joinder and the non-diverse defendants were proper parties. Adopting a report and recommendation from the magistrate judge, the district court denied the motion to remand and dismissed the non-diverse defendants. Second, unsuccessful in obtaining a remand, the Priesters filed a motion for abstention, contending that the district court should refrain from exercising jurisdiction. Adopting the magistrate judge's report and recommendation, the district court likewise denied that motion.

Unavailing in their efforts to avoid federal court, the Priesters then moved to dismiss the counterclaims against them. Citing various deed records, they challenged the validity of the assignments of the deed of trust, insisting that they call into question whether Appellees are truly owners and servicers of the loan. Because Appellees could not prove ownership, the

No. 19-40158

Priesters reasoned, they lacked standing to foreclose. The district court adopted the magistrate judge's recommendation to deny the Priesters' motion to dismiss, agreeing that "Deutsche Bank qualifies as a mortgagee with standing to foreclose under Texas Property Code § 51.0001 because it is the last entity to whom the security interest has been assigned."

Following the Priesters' motion to dismiss, Deutsche Bank and Select Portfolio moved for summary judgment on all pending claims. The district court granted the summary judgment motion in most respects but denied it regarding the counterclaim for judicial foreclosure, and the case proceeded to a bench trial. After trial, the district court reconsidered its summary judgment order and concluded that it had "erroneously denied summary judgment" on the judicial foreclosure counterclaim. Alternatively, upon consideration of the trial evidence, the court determined that Deutsche Bank and Select Portfolio were entitled to judicial foreclosure "even if" it had not reconsidered its prior denial of summary judgment. Accordingly, to prevent double recovery, the district court determined that Deutsche Bank and Select Portfolio could not also recover under alternative subrogation theories. The Priesters timely appealed.

## II.

We review a denial of a motion to remand *de novo*. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000). While we review an abstention ruling for abuse of discretion, "we review *de novo* whether the requirements of a particular abstention doctrine are satisfied." *Ark. Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) (quoting *Romano v. Greenstein*, 721 F.3d 373, 380 (5th Cir. 2013)). "A court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Kipps v. Caillier*, 197 F.3d 765, 770 (5th Cir. 1999).

5

No. 19-40158

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56(a). We review a district court's grant of summary judgment *de novo*. *Ezell v. Kan. City S. Ry. Co.*, 866 F.3d 294, 297 (5th Cir. 2017).

## III.

The Priesters assert that the district court erred in denying their motion to remand for lack of diversity jurisdiction because Appellees failed to plead their allegations with sufficient particularity. A federal court may exercise diversity jurisdiction over a civil suit between citizens of different states if the amount in controversy exceeds $75,000. *Flagg v. Stryker Corp.*, 819 F.3d 132, 135 (5th Cir. 2016). Diversity jurisdiction typically requires "complete diversity" of parties, such that no plaintiff may be a "citizen of the same State as any defendant." *Id.* at 136. A court may, however, determine that the plaintiff improperly joined a non-diverse defendant, "disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Id.* (footnote omitted). A defendant may establish improper joinder—sometimes referred to as fraudulent joinder— either by showing (1) actual fraud in the plaintiff's pleading of jurisdictional facts or (2) the plaintiff's inability to establish a cause of action against the non-diverse defendant in state court. *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied* 544 U.S. 992 (2005). A defendant establishes the second method by "demonstrat[ing] that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* Here, Appellees relied only on the second method for establishing improper joinder.

No. 19-40158

The Priesters contend that our decision in *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962), imposes a heightened pleading standard, requiring that improper joinder be pleaded with particularity and proved by clear and convincing evidence—a standard they claim Appellees did not meet. But even assuming *arguendo* that *Parks* does require a heightened pleading standard in actual fraud cases, recent cases distinguish the two methods for proving improper joinder and expressly hold that the second method utilizes a standard federal Rule 12(b)(6)-type analysis. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-01 (5th Cir. 2016) (citing *Smallwood*, 385 F.3d at 573). Thus, the Priesters' arguments are inapposite here, where Appellees did not plead actual fraud.

The Priesters then argue that the district court erred by not abstaining from exercising jurisdiction. In *Burford v. Sun Oil Co.*, the Supreme Court held that federal courts may abstain from exercising jurisdiction over matters where it otherwise would have jurisdiction. 319 U.S. 315 (1943). We have identified five factors for consideration when determining whether to abstain: (1) whether the cause of action arises under a federal or state law; (2) whether the case requires inquiry into unsettled issues of state law; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review. *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993). Significantly, abstention is not a doctrine that advises federal courts to refrain from exercising jurisdiction simply because state courts could entertain the case; rather, "only the clearest of justifications will warrant dismissal." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976).

We see no indication that the district court's ruling was "based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Kipps*, 197 F.3d at 770. First, this dispute arises under state law,

but it does not require inquiry into unsettled issues of state law. And, unlike previous iterations of this litigation, the circumstances of this case do not require venturing any *Erie* guesses about Texas law, and the district court was well equipped to assess the evidence and apply existing state law. Moreover, considering the third and fourth factors, we do not question the significance of Texas's interest in the homestead rights of its citizens or its need for a coherent policy in that regard. But particularly where no *Erie* guesses are involved, there was little reason to suspect that the district court's decision to retain jurisdiction would upset the coherency of the state's policy. Nor, finally, do the Priesters identify any special state forum for disputes of this nature. In short, dismissal was not warranted by "the clearest of justifications" and the district court did not abuse its discretion in denying the motion to abstain.

## IV.

In addition to their constitutional claims, the Priesters asserted non-constitutional claims for defamation, fraudulent concealment, fraud by non-disclosure, common-law fraud, negligent misrepresentation, breach of contract, and violations of the TDCPA. The claims for declaratory judgment, defamation, and fraudulent concealment were raised in the prior litigation, but the remaining claims for fraud by nondisclosure, common-law fraud, negligent misrepresentation, breach of contract, and violations of the TDCPA were not. Adopting the report and recommendation of the magistrate judge, the district court concluded that all their non-constitutional claims were barred by *res judicata* and, even if *res judicata* were not applicable, by the applicable statutes of limitations.

We note first that the Priesters misstate the holding of the district court when they assert that it dismissed *all* their claims as barred by *res judicata* and, alternatively, the statutes of limitations. The district court

dismissed only their non-constitutional claims on such grounds; it expressly declined to apply the doctrine of *res judicata* to their claim that the loan was constitutionally deficient because the court determined that "the issue of whether or not the [l]oan is constitutionally valid was never fully litigated" in the prior litigation.  Moreover, as the district court correctly noted, the Priesters challenge the constitutional validity of the loan as an affirmative defense to the judicial foreclosure counterclaim, but because no claim for judicial foreclosure was ever made prior to this case, such a defense could not have been raised previously.  Nonetheless, the district court did conclude, and we agree, that the Priesters' non-constitutional claims were barred by *res judicata*.[2]

We review the *res judicata* effect of a prior judgment *de novo* because it involves a question of law.  *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  The doctrine of *res judicata* encompasses two discrete but related preclusive doctrines: (1) true *res judicata* or claim preclusion and (2) collateral estoppel or issue preclusion.  *Id.*  Claim preclusion "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit."  *Id.*  Central to "the conclusive resolution of disputes," *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted), the doctrine protects litigants "from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Id.* at 153-54.  *Res judicata* applies when four elements are met: (1) the parties to the two actions are identical or in privity; (2) the prior

---

[2] Because we affirm the district court's conclusion that these claims are barred by principles of preclusion, we do not consider whether they would also be outside any applicable limitation periods.

judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or cause of action is involved in both cases. *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999).

In their briefs on appeal, the Priesters do not raise the issue of whether these elements are satisfied when applied to their claims. Rather, they contend that their claims are exempt from *res judicata*, asserting that "claim preclusion is no defense where, between the first and second suits there has been an intervening change in law or modification of significant facts creating new legal conditions." On rare occasions, we have declined to apply preclusion doctrines, particularly when constitutional rights are involved, where changed circumstances are significant and have created new legal conditions. *See Hernandez v. City of Lafayette*, 699 F.2d 734, 737 (5th Cir. 1983); *Jackson v. DeSoto Par. Sch. Bd.*, 585 F.2d 726, 729 (5th Cir. 1978). Underlying that exception is the recognition that in such cases "the operation of the preclusion doctrines would result in unequal treatment of similarly situated individuals, some of whom have the misfortune to have sought legal redress at an earlier phase of legal developments." *Jackson*, 585 F.2d at 729. The exception, however, is of "limited applicability," *Houston Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443, 448 n.10 (5th Cir. 2016), applying only where preclusion principles "would violate an overriding public policy or result in manifest injustice," *Moch v. E. Baton Rouge Par. Sch. Bd.*, 548 F.2d 594, 597 (5th Cir. 1977). It does not appertain here.

The Priesters assert that the exception should apply to their claims because the changes in state constitutional law rendered by the decisions in *Wood* and *Garofolo* are significant and create new legal conditions. *See Wood*, 505 S.W.3d at 547; *Garofolo*, 497 S.W.3d at 479. Perhaps, though we are skeptical, the changes wrought by those decisions do sufficiently impact the legal environment of the Priesters' constitutional claim to satisfy the

No. 19-40158

exception, but that is of no matter here because the district court applied *res judicata* only to the Priesters' non-constitutional claims. We fail to see, and the Priesters nowhere indicate, how the new legal conditions created by *Wood*, *Garofolo*, or any other changes in law have any bearing on those claims, which include defamation, fraudulent concealment, fraud by non-disclosure, common-law fraud, negligent misrepresentation, breach of contract, and violations of the TDCPA. Accordingly, we agree with the district court's conclusion that these claims are precluded.

## V.

The Priesters next assert that Appellees lack "standing" to foreclose because they have failed to establish an unbroken chain of title, drawing into question whether they own either the note or deed of trust. They allege that the original lender, Long Beach, sold the note and deed of trust—which were then securitized and sold to other third parties—before it merged with Washington Mutual Bank and subsequently failed. To support their assertion that Long Beach transferred the obligation before merging with Washington Mutual, the Priesters cite a voluminous 2006 filing with the Securities and Exchange Commission ("SEC") made by a separate entity called Long Beach Securities. While they concede that no record of any assignment to Long Beach Securities exists, the Priesters claim that the filing, which purportedly lists their loan number, is a representation that Long Beach Securities owned the note and deed of trust at the time of filing. Thus, they contend, when the Federal Deposit Insurance Corporation ("FDIC"), acting as receiver, acquired the assets of Washington Mutual Bank and Long Beach by operation of law, neither the note nor the deed of trust was among the assets it assumed. Accordingly, JP Morgan, having obtained those assets from the FDIC, purportedly never owned the obligations it later assigned to Deutsche Bank and so "the wrong party is attempting to foreclose."

11

The Texas Property Code specifies that "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record" qualifies as a "mortgagee" with the right to foreclose.   TEX. PROP. CODE ANN. § 51.0001(4).   The district court concluded, and the Priesters apparently do not contest, that Deutsche Bank was the last assignee of record.  Appellees submitted notarized, public real property records from Collin County, Texas, containing the legal description of the property at issue and documenting the assignment by JP Morgan to Deutsche Bank and a subsequent assignment from one Deutsche Bank entity to another.  The plain text of the Texas Property Code requires nothing more, and unlike the borrowers in *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 225-26 (5th Cir. 2013), the Priesters do not allege that the transfers involved fraud.

But there is an additional complication to this seemingly straightforward analysis under the Texas Property Code.  Texas case law cited by the Priesters suggests that, where there is an unexplained gap in the chain of title, the party seeking to foreclose must prove the transfer by which they obtained their interest. *See Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *First Gibraltar Bank, FSB v. Farley*, 895 S.W.2d 425, 428 (Tex. App.—San Antonio 1995, writ denied); *Jernigan v. Bank One, Texas, N.A.*, 803 S.W.2d 774, 777 (Tex. App.— Houston [14th Dist.] 1991, no writ).  These cases do not bolster the Priesters' position, however, because we agree with the district court's finding that

there is no gap in the chain of title from the time of the loan's inception to the most recent assignee of record.[3]

Appellees presented summary judgment evidence documenting that the original lender was Long Beach; that Long Beach merged into Washington Mutual Bank; that, as a matter of public record, JP Morgan acquired all of the assets of Washington Mutual Bank—including the assets of Long Beach—from the FDIC upon Washington Mutual Bank's failure; and that JP Morgan transferred the deed of trust to Deutsche Bank, which subsequently assigned it to itself. We fail to see any unexplained gap in that chain. *Cf. Miller v. Homecomings Fin., LLC*, 881 F. Supp. 2d 825, 831 (S.D. Tex. 2012) (finding a gap in the chain of title where purported mortgagee could only identify the most recent recorded assignment "in a chain of unknown length"). The Priesters do not so much attempt to break a link in the chain documented by Appellees as to suggest, by conjuring up a competing owner, that a secondary chain exists somewhere. That is not the same thing as identifying an unexplained gap in the chain of title. Moreover, the Priesters could not show that there is a competing assignee of record— which one would expect if Long Beach did indeed securitize and sell the obligation—who could contest the validity of the most recent assignments and commence a foreclosure action. The Priesters defaulted on their loan a decade ago. If such an entity existed, we suspect it would have come forward to enforce its rights well before now.

---

[3] Because we do not agree with the Priesters' contention that there is a gap in the chain of title, we decline to consider whether we should, or even could, take judicial notice of any documents on file with the SEC.

No. 19-40158

## VI.

The heart of the Priesters' argument is that Appellees cannot prevail on their claim for judicial foreclosure because (1) there is no cause of action for judicial foreclosure; (2) the lien was constitutionally invalid and could not be "estopped into existence" by the district court; (3) Appellees failed to carry their burden to prove the constitutional validity of the loan; and (4) Appellees failed to cure their violation of the Texas Constitution.[4] We are unpersuaded by these arguments.

First, contrary to the Priesters' contention, judicial foreclosure is its own cause of action under Texas law. We have repeatedly recognized a cause of action for judicial foreclosure under Texas Civil Practice and Remedies Code § 16.035(a). *See, e.g.*, *Ocwen Loan Servicing, L.L.C. v. REOAM, L.L.C.*, 755 F. App'x 354, 354 (5th Cir. 2018); *Justice v. Wells Fargo Bank Nat'l Ass'n*, 674 F. App'x 330, 333 (5th Cir. 2016).

The Priesters' second and third arguments are interrelated. They contend that the loan is constitutionally invalid because it was signed in their home rather than at the office of the lender, an attorney, or a title company and because they were not provided the constitutionally required notice at least twelve days before the closing took place. Relying on *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 784 (Tex. 1988), they observe that

---

[4] The Priesters also spill much ink in their brief discussing why Appellees' subrogation claims are meritless. We need not consider those arguments, however, because the district court reversed its initial finding that Appellees were entitled to contractual or equitable subrogation when it determined, and we agree, that they were instead entitled to summary judgment on their judicial foreclosure counterclaim. And on appeal, Appellees concede that the district court was correct to do so. Likewise, because we affirm the grant of summary judgment, we do not reach the Priesters' challenges to the district court's evidentiary rulings during trial.

14

No. 19-40158

the lender carries the initial burden to prove that a lien existed. From that premise, they reason that Appellees must prove, independent of the Priesters' affidavit, that the loan complied with the Texas Constitution as an element of their *prima facie* claim for judicial foreclosure. Instead, the district court, they contend, erroneously shifted the burden of proof by requiring that they prove the constitutional requirements were *not* met and then relied on their affidavit to estop them from challenging the validity of the loan. Hence, in their view, the district court estopped the lien into existence. But that argument incorrectly assumes that Appellees could not satisfy their initial burden without proving constitutional validity.

We do not agree that, as part of its initial burden under Texas law, the party bringing a claim for judicial foreclosure must establish that the loan complies with every constitutional provision. The Supreme Court of Texas has held that "section 50(a) does not create substantive rights beyond a defense to foreclosure of a home-equity lien securing a constitutionally noncompliant loan." *Wood*, 505 S.W.3d at 546 (citing *Garofolo*, 497 S.W.3d at 478). And basic principles of judicial economy demand that the party bringing a claim need not preempt every possible affirmative defense in order to make out a successful *prima facie* case. We are aware of no authority imposing such a rule of proceeding. Accordingly, we agree with the district court's conclusion that borrowers, in asserting an affirmative defense, carry the burden to establish that constitutional requirements were not met.[5]

---

[5] The Priesters challenge the authority of the cases relied on by the district court to reach this same conclusion. *See In re Chambers*, 419 B.R. 652, 670-71 (Bankr. E.D. Tex. 2009), *subsequently aff'd*, 544 F. App'x 347 (5th Cir. 2013); *Wilson v. Aames Capital Corp.*, No. 14-06-00524-CV, 2007 WL 3072054, at *1 (Tex. App.—Houston [14th Dist.] Oct. 23, 2007, no pet.). We need not resort to these cases to agree with the district court, but we

15

No. 19-40158

The district court considered the affidavit evidence to estop the Priesters from challenging the constitutional validity of the loan after it had determined that Appellees had met their burden to establish a *prima facie* case for judicial foreclosure.    Notably, the Priesters offered no competent summary judgment evidence contradicting their affidavit's statements as to the location of signing and the provision of notice, and the court accordingly granted summary judgment on a theory of quasi-estoppel.[6]  The Priesters' basic objection is that the district court estopped a lien into existence and their arguments on appeal do not challenge the district court's application of the quasi-estoppel factors as such.    Because we conclude that the district court did not estop a lien into existence, we need not consider its legal conclusions with respect to quasi-estoppel.

Finally, the Priesters argue that "Appellees' failure to cure prohibits the enforcement of the void lien."  But the premise of that contention—that the lien was constitutionally void and necessitated curing—is mooted by the district court's conclusion, which we affirm, that the Priesters are estopped from challenging constitutional validity.    Appellees bear no legal responsibility to cure what the Priesters are estopped from claiming was ailed.

AFFIRMED.

---

note that while the Priesters challenge whether the cases constitute controlling authority, they do not cite any other controlling authority that contradicts their reasoning.

[6] The way in which this case unfolded procedurally in the district court somewhat muddles the record on appeal.  At first, the district court denied summary judgment under a theory of equitable estoppel and proceeded to a bench trial.  After trial, however, the court reconsidered its prior summary judgment order and proceeded to grant summary judgment, but under a theory of quasi-estoppel.